**UNITED STATES DISTRICT AND BANKRUPTCY COURTS
FOR THE DISTRICT OF COLUMBIA**

Jean Piccola Johnson
PLAINTIFF

680 Rhode Island Ave N.E. #462B
Address (No Post Office Boxes)

Washington, D.C. 20002
City          State     Zip Code

VS.

CIVIL ACTION NO. 1:24-CV-00962-JMC

Volume Services, Inc.
DEFENDANT

Jury Trial: [ ] Yes [✓] No

_____
Address (No Post Office Boxes)

_____
City          State     Zip Code

Plaintiff Response and
production of all available documents at
this Moment.

_____
_____
_____
_____
_____
_____
_____
_____

**RECEIVED**

JUN 28 2024

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Jean P Johnson
Signature

Jean P Johnson
Name (if applicable, Prisoner ID No.)
680 Rhode Island Ave NE #462B
Address/Facility Address
Washington DC 20002
City          State     Zip Code

Rev: 01/10/2023
*Use additional pages as needed

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Baltimore Field Office**
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6685
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/28/2023

**To:** Jean Johnson
680 Rhode Island Avenue NE Apt 462B
Washington, DC 20002
Charge No: 531-2023-03540

EEOC Representative and email:    Legal Unit (267) 589-9707

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 531-2023-03540.

On behalf of the Commission,

Digitally Signed By: Rosemarie Rhodes
11/28/2023

Rosemarie Rhodes
Director

**Cc:**
Kimberly Hansen
Sodexo, Inc.
9801 WASHINGTONIAN BLVD STE 1257B
Gaithersburg, MD 20878

Robyn Welter
9801 WASHINGTONIAN BLVD FL 12
Gaithersburg, MD 20878


Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

identifying your request as a "FOIA Request" for Charge Number 531-2023-03540 to the District Director at Jamie Williamson, 801 Market St Suite 1000

Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 531-2023-03540 to the District Director at Jamie Williamson, 801 Market St Suite 1000

Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

are **not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.

4/15/2023

Wednesday (04-12-2023), I arrived to work,
prepared for my shift, and retrieved a cash
draw for the Cascade Cafe. After about 15
minutes Catering Manager Jackson
approaches, stating I was supposed to be his
floater for the day. Never receiving any
form of communication on this type of
shift lasting six hours, I questioned
why I was on a six hour float shift (as
this means I'll have to stand for more
than 5 hours with no accomodation).
Jackson responds with, "You're probably
going to be cashiering, I don't see what the
issue is- oh my goodness." To which I
reply, "you're right - oh my goodness."
Still frustrated upon reaching the Terrace
Cafe to relieve an associate for lunch, I
place a call to a support buddy to vent
that, and other work-related stresses
and frustrations (attempting to properly
release them and avoid misdirection). As
I checked out an employee of the Museum,
I noticed my system had gone offline
again, so I informed the employee and I
waited. As I waited for my system to come
back online I laughed and said (to my
support buddy) " I could just give all
this stuff away, my system went off-
line again." "I'm just over it." Shortly

How management makes changes that affect the employees yet these changes aren't communicated with the employees. How, despite my doctor's note, I'm being scheduled for 8 hour shifts in Gelato with no accomodations nor a reasonable rest period in between those scheduled shifts. I explained how working shifts as such will cause my sciatic nerve to go out, and the lose of my ability to walk. That I would be out until the nerve heals, and (not knowing the length of leave I'd be on) possibly be facing termination because of it. How that affects my personal life and not their business. After a moment of silence, I ask if I was free to leave. Bobby repeats that there will be an investigation, regarding the accusation, I excuse myself, and I leave. After communication through text message, I was informed by HR Manager, Mrs. Marline, to come in on Friday (at 11AM) 04-14-2023.

Friday (04-14-2023) I arrive to the managers office, greet everyone, and sit and wait. A short while later a Union Steward, Free Tesfaye, arrives and we're both called into the office by HR Manager, Mrs. Morline. I am then informed by Mrs. Morline (HR) that due to the Marker in which the museum employee had perceived my conversation. My employment was being terminated. In addition, Mrs. Morline (HR) informed me of a statement made to her by Aaron Beaver (Food Service Contract Manager at National Gallery of Art), in which Mr. Beaver stated to her (Mrs. Morline-HR) that "they could not have someone like that working for the company". I questioned how they could accept one part of the situation without a proper investigation nor any evidence, to which I was told by HR that it was the employee's word against mine. There was no mention nor conversation regarding the original accusation of giving away food items (intentional theft) that led to my suspension, nor any discussion of the investigation I was told would be conducted.

I declined to accept or sign the

termination documents and requested
a Meeting with a Union Rep. This
request was Made with Union
Steward, Free Tesfaye.

Around or about December 2022 I requested accommodations for my diagnosis of Chronic Sciatica and Patellafemoral of my right knee, scheduled and attended a doctor's appointment (where I had requested a specified note stating my diagnosis and suggested/required accommodations, and had given a copy of both documents to management. I was accommodated until February of 2023, and was informed by management that I needed to update my doctor's note requesting further accommodation. While awaiting availability for my doctor's schedule to open for an appointment the events of April 12, 2023 occured, my suspension and ultimate termination on April 14, 2023. While fighting a grievance I'd filed with my Union I was able to see my doctor and update the note, in addition to having my doctor complete the employer's medical accommodations form (requested by the HR Manager). My employment was reinstated in June of 2023

and upon my reinstatement I had given a copy of the medical and updated forms to the GM. During the 30-45 days I remained employed with the company I began to experience harassment at the hands of the Ass GM, and retaliation at the hands of the Ass. GM and possibly the Catering Manager (as the Catering Manager created the schedule but the Ass. GM would change the schedule without word and per his discretion). Despite having copies of medical accommodations and an updated doctor's note, and my communicating (with multiple managers) my new availability upon reinstatement of my employment I was repeatedly scheduled for shifts that conflicted with my life outside of my employment with the company (Sodexo Live). Within my first week back I was assigned to a POS system and was informed by the office manager that (the Ass. GM) Bobby wanted me at POS # 2.

My employment began in October of 2022 and ended with my forced resignation in July 2023, and throughout my employment with the company I have never been assigned (nor told I would be assigned) a specific POS. No other associate has been, prior to, or after my reinstatement, assigned a specific POS. In addition, and upon my reinstatement, during my assigned work shifts I took notice of the Ass. GM standing in (or around) my work area watching me, as he "casually conversed" with different people. He would do this often throughout the day, causing discomfort in me. During one of my Gelato Bar shifts (07/18/23) I'd arrived to work to start setting up (set up begins at 9AM - bar opens at 10AM) and saw that after about 10 minutes, no other assigned associates had arrived. After speaking with the ~~management~~ Ass. GM, I'm instructed by the Ass. GM

to begin setting up the pastry case
and once I'm done that he would
instruct me further. Once I've set up
the pastry case I seek out the Ass. GM
and find the GM instead. I inform
her of my being the only associate at
the Gelato Bar and what the Ass. GM
instructed me to do. She instructs me
to go and finish setting up and that
she would send someone to assist me.
Some time later, the GM and an intern
for the company had come over to
assist. The first Associate scheduled
(outside of myself) didn't arrive
until after the Gelato Bar had
opened. Also on this day (07/18/23)
I had communicated with the Ass. GM
that despite being scheduled outside
of my availability (and despite
multiple communication attempts with
3 different managers) I would need
to leave by 3:30 PM (this is the
communicated time I've stated
multiple times) in order to get to
my other place of employment, which
was in Arlington, VA (Ronald Reagan.

I was told by the Ass. GM, "Jean, you've gotta do what you've gotta do!" This was communicated between 10:30AM-11AM. Later in the day (07/18/23) I was sitting/leaning on a counter at the back of the Gelato Bar, resting my back and my knee. I'd been there maybe 15/20 minutes when I stood to turn around and I was face-to-face with the Ass. GM, who'd been standing directly on my back for an unknown period of time and without my being aware of his presence.

Upon my reinstatement were terms negotiated between myself and the company (with me being represented by my Union Representative). The company's first offer was a third notice infraction under the position of Utility Associate, which I declined respectfully. The second offer was a second notice infraction under my original position of Cashier/Attendant, which I accepted. I began to note

things I saw that were against company policy, specifically the infraction that was currently in my employment file documented as "use of personal phone while on shift."

June 29, 2023, Associate Cleo using personal phone on shift, while within work area.

July 04, 2023, associate Cleo using personal phone while in presence of Ass. GM and Catering Manager (10:45 AM). Associate hid behind pillar (to disconnect call) a few feet from both managers.

July 04, 2023, associates Sharon and Keishe arrive late for work (11:04 AM I watch both walk towards employee locker room.

July 06, 2023, Male Utility Associate using personal phone, via earbud, while on shift.

There were no forms of discipline (verbal nor written) for any of these associates.

These actions, and lack of accountability held, in addition to the harassment and ~~petition~~ retaliation I endured upon my

reinstatement I felt left me with no
option other than to resign my
position with the company (07/31/2023).
My having to call out from work, due
to being repeatedly being scheduled
outside of my availability, was also a
contributing factor that led me to
resign.



4:22 · 3:39:51 · 20%

← Bobby*NGA 📹 ⋮

Bobby*NGA

**Subject: Good afternoon**
Jean please reach out to
Morline,
Thank you

Tuesday, Jul 11 · 7:02 AM

Good morning. I'm
not going to make it in
today.

(667) 201-8921

Sorry who is this ?

Tuesday, Jul 11 · 11:02 AM

(667) 201-8921

This is no longer Bobby's
number.

11:02 AM

🖼 Attach recent photo

⊕ 🖼 Text message 😊 🎤

I DID NOT STATE A NAME!



4:22    📞 3:39:41      📶 ▼⁄ 🔋 20%

←   Bobby*NGA     📹 ⋮

Monday, Jul 10 • 7:08 AM

Good morning Bobby. This is Jean.
My schedule has not changed for tomorrow. I'm not available to close Gelato.

Monday, Jul 10 • 1:12 PM

Bobby*NGA

**Subject: Good afternoon**
Jean please reach out to Morline,
Thank you

Tuesday, Jul 11 • 7:02 AM

Good morning. I'm not going to make it in today.

(667) 201-8921

Sorry who is this ?

Text message   😊 🎤

⊕ 🖼

←   **J**   Jackson Tinker   🎥   📞   ⋮

Monday, Jun 19 • 6:37 PM

Good evening Jackson. I saw my schedule. I have a ft job so I need to change my availability. I can work 2 days a week, M-F and I'm only able to close Cascade Cafe.

Who is this?

Tuesday, Jun 20 • 4:18 AM

Is this Jean? To confirm you can only work 2 days a week. Correct

Tuesday, Jun 20 • 8:22 AM

Yes, it is

Ok. Good to hear from you. Look forward to seeing again. And just to confirm. You can only work 2 days?



Yes

⊕   🖼️   Text message   ☺   🎤

←  J  Jackson Tinker  📹  📞  ⋮

Tuesday, Jun 20 · 4:18 AM

Is this Jean?  To confirm you can only work 2 days a week.  Correct

Tuesday, Jun 20 · 8:22 AM

Yes, it is

Ok. Good to hear from you.  Look forward to seeing again. And just to confirm. You can only work 2 days?

Yes

Saturday, Jun 24 · 8:25 AM

Good morning. I am not available to close gelato. I have another job.

Good morning.  I am reaching out to Morline and Bobby.

8:38 AM

⊕  🖼   Text message   ☺  🎤

Wednesday, Jul 5 • 12:37 PM

Good afternoon Bobby. This is Jean. I'm sending this message to inform you that I will not be able to work Gelato until closing nor without the accommodations stated in my doctor's note. I will be updating the note at my next doctor's appointment in another couple of weeks. My availability is 2 days a week and scheduled no later than 3:30, at the latest, due to me acquiring FT employment.

Bobby*NGA

**Subject: Hello Jean**
I will let morline know, she will be contacting you, Thank you

Text message

# EXHIBIT A



8:21      ✳ LTE ◢ ▯ 24%

←   Bobby*NGA     ◻ ⋮

**Subject: Hello Jean**
I will let morline know, she will be contacting you, Thank you

Yesterday • 7:08 AM

Good morning Bobby. This is Jean.
My schedule has not changed for tomorrow.
I'm not available to close Gelato.

Yesterday • 1:12 PM

BillyOcean*NGA

**Subject: Good afternoon**
Jean please reach out to Morline,
Thank you

Text message    ☺ ⏺



# M Gmail

**Jean Johnson**
<jdaniejo@gmail.com>

---

## Medical accommodation forms

1 message

---

**Jean Johnson** <jdaniejo@gmail.com>
Sat, Jul 15, 2023 at 2:10 PM
To: "Lynton, Morline" <Morline.Lynton@sodexo.com>

Good morning. Would you happen to have the forms you need my doctor to complete? If so, you can email them to me so I can have my doctor complete them on Monday.



**From:** Lynton, Morline
**Sent:** Friday, July 21, 2023 5:06 PM
**To:** Jean Johnson <jdaniejo@gmail.com>
**Cc:** Ahmed, Ikhlaq <Ikhlaq.Ahmed@sodexo.com>; Tinker, Jackson <Jackson.Tinker@sodexo.com>
**Subject:** RE: Medical accommodation.

Hi Jean,

yes.

 

**Morline Lynton**
District Human Resources Manager
Sodexo Live!
Mb: (667) 209-1115
Email: morline.lynton@Sodexo.com

**From:** Jean Johnson <jdaniejo@gmail.com>
**Sent:** Thursday, July 20, 2023 6:03 PM
**To:** Lynton, Morline <Morline.Lynton@sodexo.com>
**Subject:** Medical accommodation.

> **External sender**
> Check the sender and the content are safe before clicking links or open attachments.

Good evening Mrs. Morline. I'm sending this email regarding my medical accommodation. I am scheduled for Gelato this coming Tuesday and would like to know if I'll be accommodated, per my doctor's note.

Thank you.



M Gmail

Jean Johnson
<jdaniejo@gmail.com>

## Availability and Seniority
1 message

**Jean Johnson** <jdaniejo@gmail.com>
Fri, Jul 28, 2023 at 8:00 PM
To: "Lynton, Morline" <Morline.Lynton@sodexo.com>, Sarah Cox <scox@unitehere.org>, Margaret Sharp <msharp@unitehere.org>

Good evening Mrs. Morline. I have communicated repeatedly, and with multiple managers (Jackson, Bobby, yourself), regarding my availability upon being reinstated with the company (initial communication via text with Jackson on 06/19/2023). I am still being scheduled past my available time of 3:30PM, in addition to being scheduled on the weekends.
Can you please communicate my availability with whomever is creating the schedule. I am scheduled to work Sunday, 07/30 and Monday, 07/31, both are days and times that do not align with the availability that I have communicated.
I am available M - F, until 3:30PM, no weekend availability.

I would also like to discuss why my seniority is not being honored when the schedule is created. Why am I being

scheduled for Gelato over another employee I have seniority above when I have been pushed to Gelato by employees who have seniority above myself?

Thank you,
Jean Johnson



**M** Gmail            Jean Johnson <jdaniejo@gmail.com>

## Re: Availability and Seniority
1 message

**Jean Johnson** <jdaniejo@gmail.com>      Mon, Jul 31, 2023 at 7:26 AM
To: "Lynton, Morline" <Morline.Lynton@sodexo.com>

You're forwarding my concerns to Jackson? Jackson told me he would speak with you weeks ago, in June.

On Mon, Jul 31, 2023, 7:12 AM Lynton, Morline <Morline.Lynton@sodexo.com> wrote:

Hi Jean,

I'll forward your concerns to Jackson.

**Morline Lynton**

District Human Resources Manager

Sodexo Live!

Mb: (667) 209-1115

Email: morline.lynton@Sodexo.com

---

To: Lynton, Morline <Morline.Lynton@sodexo.com>; Sarah Cox <scox@unitehere.org>; Margaret Sharp <msharp@unitehere.org>
**Subject:** Availability and Seniority

---

**External sender**

Check the sender and the content are safe before clicking links or open attachments.

Good evening Mrs. Morline. I have communicated repeatedly, and with multiple managers (Jackson, Bobby, yourself), regarding my availability upon being reinstated with the company (initial communication via text with Jackson on 06/19/2023). I am still being scheduled past my available time of 3:30PM, in addition to being scheduled on the weekends.

Can you please communicate my availability with whomever is creating the schedule. I am scheduled to work Sunday, 07/30 and Monday, 07/31, both are days and times that do not align with the availability that I have communicated.

I am available M - F, until 3:30PM, no weekend availability.

I would also like to discuss why my seniority is not being honored when the schedule is created. Why am I being scheduled for Gelato over another employee I have seniority above when I have been pushed to Gelato by employees who have seniority above myself?

Thank you,

Jean Johnson

These copies of my schedule, email correspondence, and text message communication, upon being reinstated provide evidence to back up my claims of not being accommodated based on my availability. These individual communications are between myself, HR, the Ass. GM, Union Reps, and the Catering Manager.


# Availability and Seniority

1 message

**Jean Johnson** <jdaniejo@gmail.com>    Fri, Jul 28, 2023 at 8:00 PM
To: "Lynton, Morline" <Morline.Lynton@sodexo.com>, Sarah Cox <scox@unitehere.org>, Margaret Sharp <msharp@unitehere.org>

Good evening Mrs. Morline. I have communicated repeatedly, and with multiple managers (Jackson, Bobby, yourself), regarding my availability upon being reinstated with the company (initial communication via text with Jackson on 06/19/2023). I am still being scheduled past my available time of 3:30PM, in addition to being scheduled on the weekends.
Can you please communicate my availability with whomever is creating the schedule. I am scheduled to work Sunday, 07/30 and Monday, 07/31, both are days and times that do not align with the availability that I have communicated.
I am available M - F, until 3:30PM, no weekend availability.

I would also like to discuss why my seniority is not being honored when the schedule is created. Why am I being

scheduled for Gelato over another employee I have seniority above when I have been pushed to Gelato by employees who have seniority above myself?

Thank you,
Jean Johnson

← Ⓕ Free     📹 📞 ⋮

Friday, Apr 21 • 6:19 PM

🔒 RCS chat with Free. Learn more

Hey Free. I'm checking to see if you've had a chance to connect with the Union reps and schedule my meeting.

Tuesday, Apr 25 • 4:03 PM

2027547254
This Sara's number call he she is the union

4:03 PM 🔒

⊕ 🖼    RCS message    😊 🎤

←   **S**   Sara*NGA Union   ◻️📷   📞   ⋮

**Monday, May 8 • 10:53 AM**

🔒 RCS chat with Sara*NGA Union. Learn more

Good morning Sara. I don't know if you heard this during our zoom meeting on Friday, but Mrs. Morline contradicted herself in a lie.
She first said that I didn't bother to ring up the employee's purchase. She then changed it to me not bothering to ensure that the transaction went through, after you mentioned that the system had failed on me.

**Monday, May 15 • 11:07 AM**

Good morning Sara. Are there any updates regarding the information you were waiting for?

**Monday, M━ 5 • 4:47 PM**

↓

Yes. Morline responded saying

⊕   🖼️    RCS message     🙂   🎤

Monday, May 15 • 4:47 PM

Yes, Morline responded saying that the client is barring you from the building, which complicates the issue. I'm waiting for them to provide that communication from the client

Alright. Can you explain how it complicates the issue? I don't understand how it has gone from an accusation of theft to me being barred by a client. That means they can take that client's word over mine with no actual proof or evidence.

Is it possible for me to get a copy of all the documents you received regarding this?

Wednesday, May 17 • 10:51 AM

Good morning  ↓  t possible for me to receive a copy of the

RCS message

Wednesday, May 17 • 10:51 AM

> Good morning. Is it possible for me to receive a copy of the documents you were given?

> Also an answer to my question I asked 2 days ago.

Wednesday, May 17 • 4:09 PM

It's complicated because the client has the right to ban people from their property and the client is not subject to the union contract because that is with the company. I am speaking to someone this week about what the options are here and I'll be in touch with you when I know more.

> Alright.
> Wouldn't the company have to relocate me since the alleged offense was n̲ ̲rminable?

  RCS message  

Alright.
Wouldn't the company have to relocate me since the alleged offense was not terminable? Even though I am being barred and since I was under a union contract?

That is what I need to check on, I don't want to give you incorrect information

Alright. Thank you.

Friday, May 26 • 9:44 AM

Good morning Sara. Has there been any info on the situation?

Thursday, Jun 1 • 4:00 PM

Hi Jean. Last week Morline said she's waiting for the client to give them a response which they said to expect this week. If i don't hear

RCS message

Thursday, Jun 1 • 4:00 PM

Hi Jean. Last week Morline said she's waiting for the client to give them a response, which they said to expect this week. If i don't hear from her tomorrow I'll follow up

Alright. I'm just pondering why, and find it very suspicious that, it's taking so long to receive a response from the client but it was fairly easy for that client to accuse me of stealing and have me barred from working there within a matter of days.

Friday, Jun 9 • 5:34 PM

Good evening Sarah. It's been 2 weeks since I've heard anything from you. It's been more than 30 days since you requested documentation regarding my being barred from the building. If you don't have this documentation


RCS message

Friday, Jun 9 • 5:34 PM

Good evening Sarah. It's been 2 weeks since I've heard anything from you. It's been more than 30 days since you requested documentation regarding my being barred from the building. If you don't have this documentation by the end of the business day, June 16, 2023, I will proceed with filing a complaint with the department of Labor and with the EEOC.

Monday, Jun 12 • 5:46 PM

Hi Jean. I have been nagging them for the information and a date for the next step meeting, they said they'd have a response by today but I still haven't seen anything so I sent another email. If by the end of the week we still don't have the response I will be

   

Monday, Jun 12 • 5:46 PM

Hi Jean. I have been nagging them for the information and a date for the next step meeting, they said they'd have a response by today but I still haven't seen anything so I sent another email. If by the end of this week we still don't have the response I will be looking into what the next step of escalation is per the contract. I'll let you know as soon as I know anything

You're doing your part. I'm not going to continue to wait in them to keep playing this game. This is how I know I was wrongfully terminated in regards to retaliation due to my physical health issue. This all started when I started complaining about being scheduled multiple days, back to ck, in Gelato. I was told I was being scheduled

RCS message

You're doing your part. I'm not going to continue to wait in them to keep playing this game. This is how I know I was wrongfully terminated in regards to retaliation due to my physical health issue. This all started when I started complaining about being scheduled multiple days, back to back, in Gelato. I was told I was being scheduled that way because they needed me. No one thought of nor was concerned with my health nor the possibility of me losing mobility in my legs from working that type of schedule without the accommodations stated in my doctor's note (of which the GM has had a copy since 12/2022). They'd stopped accommodation me according to my doctor's note and told me I would have to walk back and forth or carry one of those heavy chairs and sit in the back

12/2022). They'd stopped accommodation me according to my doctor's note and told me I would have to walk back and forth or carry one of those heavy chairs and sit in the back. If you've seen the back room at the Gelato bar you'd know that there is no way nor room to put a chair back there.
I'm done waiting on them and will be filing my complaint.

Tuesday, Jun 13 • 12:41 PM

As an update, we are probably going to be having the next step grievance meeting this Thursday or Friday. Still figuring out the timing and I'll let you know

Tuesday, Jun 13 • 6:22 PM

Are you able to do Thursday at 3 for the grievanc    eeting over zoom?

RCS message

 **S** Sara*NGA Union 📹 📞 ⋮

Tuesday, Jun 13 • 6:22 PM

Are you able to do <u>Thursday at 3</u> for the grievance meeting over zoom?

Wednesday, Jun 14 • 10:57 AM

Hi Jean. Can you let me know if <u>Thursday at 3</u> works for you?

I'm available.

Wednesday, Jun 14 • 5:36 PM

Ok we're set for <u>tomorrow at 3</u>

Thursday, Jun 15 • 12:18 PM

Hello Sara, is it possible to send me the documents they just sent you regarding the client's statement.

↓

Yes, remind me your email

⊕  RCS message 😊 🎤

Yes, remind me your email address?

jdaniejo@gmail.com
Thank you.

Thursday, Jun 15 • 2:58 PM

Texting with Sara*NGA Union (SMS/MMS)

https://us05web.zoom.us/j/87078590210?pwd=alV5TG1WTFRCUnJzZy94ZlBUZTc5Zz09

🔒 RCS chat with Sara*NGA Union

Can you send me any notes from that zoom meeting please?

Thursday, Jun 15 • 5:30 PM

Okay, thanks

Forwarding wha⌄ey sent me now

RCS message

Forwarding what they sent me now

Friday, Jun 16 • 12:12 PM

Good afternoon Sara. I was wondering if it's possible to have that termination taken off my employee file with Sodexo. I'd like that removed.

Monday, Jun 19 • 10:58 AM

The discipline is being changed in your file from a termination to a second warning. They may keep a record of what happened (the fact that you were terminated and brought back) but for disciplinary purposes it will no longer be a termination.

Alright. Thank you.

10:58 AM •

RCS message



**M** Gmail

Jean Johnson
<jdaniejo@gmail.com>

---

# Re: Time availability and Medical accommodation.

1 message

---

**Margaret Sharp**
<msharp@unitehere.org>
To: Jean Johnson <jdaniejo@gmail.com>

Tue, Jul 11, 2023
at 4:28 PM

Hi Jean,

Thank you for your email. May I ask, do you have an FMLA or ADA accommodation on file with Sodexo? If so, they cannot legally refuse to accommodate your medical needs. Can you send me a copy of the doctors note that you are referring to from 12/2022, as well as any communication that was in writing to or from management?

Best,



**M** Gmail

Jean Johnson
<jdaniejo@gmail.com>

---

# Re: Time availability and Medical accommodation.

1 message

---

Jean Johnson <jdaniejo@gmail.com>
Tue, Jul 11, 2023 at 8:30 PM

To: Margaret Sharp <msharp@unitehere.org>

This is all communication I have between myself and all managers there. HR Manager, Assistant GM, and Catering Manager. I've communicated this multiple times to all and have been ignored.

On Tue, Jul 11, 2023, 4:29 PM Margaret Sharp <msharp@unitehere.org> wrote:

> Hi Jean,
>
>
> Thank you for your email. May I ask, do you have an FMLA or ADA accommodation on file with Sodexo? If so, they cannot legally refuse to accommodate your medical needs. Can you send me a copy of the doctors note that you are referring to from 12/2022, as well as any communication that was in writing to or from management?
>
>
> Best,
>
>
> Margaret
>
>
>
> Margaret Sharp
>
> UNITE HERE Local 23
>
> ---
>
> **From:** Jean Johnson <jdaniejo@gmail.com>
> **Date:** Monday, July 10, 2023 at 9:39 AM
> **To:** Margaret Sharp <msharp@unitehere.org>
> **Subject:** Time availability and Medical accommodation.



# M Gmail

Jean Johnson
<jdaniejo@gmail.com>

---

## Time availability and Medical accommodation.

1 message

**Jean Johnson** <jdaniejo@gmail.com>

Mon, Jul 10, 2023 at 9:39 AM

To: msharp@unitehere.org

Good morning Ms. Sharp.

My name is Jean Johnson and I've been working with Sara Cox regarding a grievance I'd filed in April of this year. Although I've regained my employment with Sodexo Live, I've also gained full time employment in addition to my employment with Sodexo Live.

I have communicated these changes with management at NGA, in addition to providing my availability to them, to include available days per week and hours, via text message and via email. The managers I've communicated this with are the HR Manager, the Assistant GM, and the Catering Manager. I have also communicated with these same managers that I would not be able to work at the Gelato bar without doctor specified rest periods, according to my doctor's note that is dated 12/2022, due to an physical health issue I have. I've been informed by my assistant GM that the doctor's note needs to be updated. I have an upcoming appointment with my doctor for reevaluation next week. I am currently scheduled to work until 5:30pm tomorrow, 07/11, and next Tuesday, 07/18. I feel that I have no other option than to call out of work on those days and face possible, and unwarranted, disciplinary action. I do not feel like I will be accommodated, and standing for long periods of time without rest will cause more damage to my physical health.

I've reached out to the assistant GM this morning and have not yet received a response in regards to my schedule being changed to accommodate my new availability nor my being accommodated while standing for a 6 hour shift in Gelato. My note specifies that I cannot stand for more than 4 hours without pain.

Please contact me to advise on proper steps to handle this. I am currently on a second notice due to an agreement of terms between myself and the company.

Good morning Ms. Sharp.

My name is Jean Johnson and I've been working with Sara Cox regarding a grievance I'd filed in April of this year. Although I've regained my employment with Sodexo Live, I've also gained full time employment in addition to my employment with Sodexo Live.

I have communicated these changes with management at NGA, in addition to providing my availability to them, to include available days per week and hours, via text message and via email. The managers I've communicated this with are the HR Manager, the Assistant GM, and the Catering Manager. I have also communicated with these same managers that I would not be able to work at the Gelato bar without doctor specified rest periods, according to my doctor's note that is dated 12/2022, due to an physical health issue I have. I've been informed my assistant GM that the doctor's note needs to be updated. I have an upcoming appointment with my doctor for reevaluation next week.

I am currently scheduled to work until 5:30pm tomorrow, 07/11, and next Tuesday, 07/18. I feel that I have no other option than to call out of work on those days and face possible, and unwarranted, disciplinary action. I do not feel like I will be accommodated, and standing for long periods of time without rest will cause more damage to my physical health.

I've reached out to the assistant GM this morning and have not yet received a response in regards to my

schedule being changed to accommodate my new availability nor my being accommodated while standing for a 6 hour shift in Gelato. My note specifies that I cannot stand for more than 4 hours without pain.

Please contact me to advise on proper steps to handle this. I am currently on a second notice due to an agreement of terms between myself and the company.

---

**7 attachments**



**Screenshot_20230711-201647.png**
220K

Gmail - Margaret3.pdf
File | C:/Users/jdani/OneDrive/Desktop/EEOC/Gmail%20-%20Ma...



Screenshot_20230711-202256.png
254K

Screenshot_20230711-201702.png
207K

Screenshot_20230711-202330.png
262K

Screenshot_20230711-202347.png
240K



**Screenshot_20230711-202108.png**
248K

**Screenshot_20230711-202134.png**
228K

Gmail - Margaret4.pdf

File | C:/Users/jdani/OneDrive/Desktop/EEOC/Gmail%20-%20Ma...

Draw | Read aloud | 1 of 7 | Q



# M Gmail

**Jean Johnson**
<jdaniejo@gmail.com>

---

## Availability and Medical accommodation.

1 message

**Jean Johnson**                                        Wed, Jul 12, 2023 at
<jdaniejo@gmail.com>                                              12:36 AM
To: Margaret Sharp <msharp@unitehere.org>

Here is all communication between myself and
management informing them of my new availability and
required, continued, medical accommodation. Upon
receipt of my doctor's note in December of 2022, I was
being accommodated. By February of 2023, I was told by
the Assistant GM that I would need to update the
doctor's note.
I have an upcoming doctor's appointment for re-
evaluation and to update my note with a specified date or
specified instructions. Whichever my doctor deems
necessary for my health.

The communication is in order, beginning with the
Catering Manager, Jackson. Following with the HR
Manager, and ending with the Assistant GM. It's been
suggested that I speak with the HR Manager, which I did
on 07/06/2023, and was again informed by that manager
that I needed to update the note. I informed the HR
Manager of my upcoming appointment, to which she
replied, "hopefully I'll have the paperwork for your doctor
to complete."

I feel like I'm being discriminated against regarding my
health and my seniority and that I am being targeted due
to my previous grievance filed and won.

I've also noticed that I'm currently being watched by
management and other associates. Upon my return, I
have been given a specific register to work at.
I am the only associate who has been assigned a POS
system and the only associate who cannot choose which
POS system I'd like to be on. I was told by an office
manager that the assistant GM has told him to place me
at POS system #2.

During one of my shifts last week my POS system froze.
I asked the associate behind me to take the guests I was
checking out and the Assistant GM proceeded to fix my
system. There was an exchange of words between
myself and that other associate regarding the guests
total for their meal. After informing the associate that I'd
given the guest the senior discount, I was told by the HR
manager, at the end of my shift, to allow the guests to
ask about the discount before giving it to them.

This same employee I had that exchange with is the very
employee I've been assigned to sit directly in front of,
who is repeatedly instructing me to do things and not do
things, as if she is a manager, and who I've also
witnessed instructing guests to food stations for
employee containers. In addition to instructing the guests



 Gmail                          **Jean Johnson**
                                   <jdaniejo@gmail.com>

# Re: Availability and Medical accommodation.

1 message

**Jean Johnson**                        Wed, Jul 12, 2023 at
<jdaniejo@gmail.com>                              10:44 AM
To: Margaret Sharp <msharp@unitehere.org>

Here is the doctor's note that needs updating.

On Wed, Jul 12, 2023, 12:36 AM Jean Johnson
<jdaniejo@gmail.com> wrote:

> Here is all communication between myself and
> management informing them of my new availability
> and required, continued, medical accommodation.
> Upon receipt of my doctor's note in December of 2022,
> I was being accommodated. By February of 2023, I
> was told by the Assistant GM that I would need to
> update the doctor's note.
> I have an upcoming doctor's appointment for re-
> evaluation and to update my note with a specified date
> or specified instructions. Whichever my doctor deems
> necessary for my health.
>
> The communication is in order, beginning with the
> Catering Manager, Jackson. Following with the HR

Manager, and ending with the Assistant GM. It's been
suggested that I speak with the HR Manager, which I
did on 07/06/2023, and was again informed by that
manager thatl needed to update the note. I informed
the HR Manager of my upcoming appointment, to
which she replied, "hopefully I'll have the paperwork
for your doctor to complete."

I feel like I'm being discriminated against regarding my
health and my seniority and that I am being targeted
due to my previous grievance filed and won.

I've also noticed that I'm currently being watched by
management and other associates. Upon my return, I
have been given a specific register to work at.
I am the only associate who has been assigned a POS
system and the only associate who cannot choose
which POS system I'd like to be on. I was told by an
office manager that the assistant GM has told him to
place me at POS system #2.

During one of my shifts last week my POS system
froze. I asked the associate behind me to take the
guests I was checking out and the Assistant GM
proceeded to fix my system. There was an exchange
of words between myself and that other associate
regarding the guests total for their meal. After
informing the associate that I'd given the guest the
senior discount, I was told by the HR manager, at the
end of my shift, to allow the guests to ask about the
discount before giving it to them.

This same employee I had that exchange with is the very employee I've been assigned to sit directly in front of, who is repeatedly instructing me to do things and not do things, as if she is a manager, and who I've also witnessed instructing guests to food stations for employee containers. In addition to instructing the guests to place the container in their bag(s), not let security see, and to not take the food out while in the building. I've witnessed this associate take and place personal phone calls in the presence of management as well. The very company violation I just received disciplinary action for.

Every day I'm scheduled and arrive to retrieve my cash till, this very employee is on her personal phone during her shift. This has been a regular occurrence for months. I've even witnessed this associate wait away from her assigned area, without manager approval, to place and take personal phone calls. All a violation of this company's policy and cause for disciplinary action, where there are none.

I will be needing to call out tomorrow, as I had to today, due to scheduled training I have with my full time job. There will be points accumulated from today, 07/11 and tomorrow so I'm fairly sure they're going to attempt another disciplinary action. I will also be needing to call out on 07/18 due to my health and their determination to schedule me for the Gelato bar. I absolutely am not able to work for 6 to 8 hours without resting the nerve in my back throughout my shift.

Thank you for responding.

I've not said anything to any managers about what I've witnessed so as not to cause myself any further complications.



**PXL_20230712_144332298.jpg**
3062K

Gmail - Margaret4.pdf

← C ⌂ ① File | C:/Users/jdanj/OneDrive/Desktop/EEOC/Gmail%20-%20Ma...

≡  ⊟ ∨  ∀  Draw ∨  ⬧  ▭  Read aloud     −  +  ⊞   3  of 7

to place the container in their bag(s), not let security see, and to not take the food out while in the building. I've witnessed this associate take and place personal phone calls in the presence of management as well. The very company violation I just received disciplinary action for.

Every day I'm scheduled and arrive to retrieve my cash till, this very employee is on her personal phone during her shift. This has been a regular occurrence for months. I've even witnessed this associate wait away from her assigned area, without manager approval, to place and take personal phone calls. All a violation of this company's policy and cause for disciplinary action, where there are none.

I will be needing to call out tomorrow, as I had to today, due to scheduled training I have with my full time job. There will be points accumulated from today, 07/11 and tomorrow so I'm fairly sure they're going to attempt another disciplinary action. I will also be needing to call out on 07/18 due to my health and their determination to schedule me for the Gelato bar. I absolutely am not able to work for 6 to 8 hours without resting the nerve in my back throughout my shift.

Thank you for responding.

I've not said anything to any managers about what I've witnessed so as not to cause myself any further complications.

---

**7 attachments**



Screenshot_20230711-201702.png
207K

Screenshot_20230711-201647.png
220K



*Gmail - Margaret6.pdf

File | C:/Users/jdani/OneDrive/Desktop/EEOC/Gmail%20-%20Ma...

Draw     Read aloud     —  +     1    of 4

## M Gmail

**Jean Johnson**
<jdaniejo@gmail.com>

---

## Re: Availability and Medical accommodation.

1 message

---

**Jean Johnson** <jdaniejo@gmail.com>                Mon, Jul 24, 2023 at 11:56 AM

To: Margaret Sharp <msharp@unitehere.org>

Good Morning, Ms. Sharp. I am emailing to inquire about the last email I sent to you. It has been almost 2 weeks and there has been no communication on your end.

On Wed, Jul 12, 2023 at 10:44 AM Jean Johnson <jdaniejo@gmail.com> wrote:
> Here is the doctor's note that needs updating.
>
> On Wed, Jul 12, 2023, 12:36 AM Jean Johnson <jdaniejo@gmail.com> wrote:
>> Here is all communication between myself and management informing them of my new availability and required, continued, medical accommodation. Upon receipt of my doctor's note in December of 2022, I was being accommodated. By February of 2023, I was told by the Assistant GM that I would need to update the doctor's note.

I have an upcoming doctor's appointment for re-evaluation and to update my note with a specified date or specified instructions. Whichever my doctor deems necessary for my health.

The communication is in order, beginning with the Catering Manager, Jackson. Following with the HR Manager, and ending with the Assistant GM. It's been suggested that I speak with the HR Manager, which I did on 07/06/2023, and was again informed by that manager that I needed to update the note. I informed the HR Manager of my upcoming appointment, to which she replied, "hopefully I'll have the paperwork for your doctor to complete."

I feel like I'm being discriminated against regarding my health and my seniority and that I am being targeted due to my previous grievance filed and won.

I've also noticed that I'm currently being watched by management and other associates. Upon my return, I have been given a specific register to work at. I am the only associate who has been assigned a POS system and the only associate who cannot choose which POS system I'd like to be on. I was told by an office manager that the assistant GM has told him to place me at POS system #2.

During one of my shifts last week my POS system froze. I asked the associate behind me to take the guests I was checking out and the Assistant GM

JOHNSON, Jean **DOB:** 01/03/1977 (46 yo F) **Acc No.** 300035070

# REFERRAL

Jacob T Darnell, DO                                                                                    Jean Johnson
Family Medicine                                                                                        01/03/1977
**Upper Cardozo Health Center**
3020 14TH ST NW , WASHINGTON, DC-20009-6865
Tel: 202-469-4699 Fax: 202-548-8650

---

Date:                          07/17/2023                    *NRH - Physical Therapy*

**Patient Information:**
Patient Name:            Jean Johnson
Patient DOB:             01/03/1977
Patient Insurance:       Amerigroup DC Alliance
Patient Subscriber No:   70064404
Patient Address:         29 46TH ST SE, APT 8, WASHINGTON, DC, US 20019-8433
Patient Phone:           202-394-3037
Patient Work Phone:
Patient Cell Phone:      202-394-3037                         *9/20/23*
Patient SSN:             XXX-XX-4613

**Insurance Information**
Insurance Name:          Amerigroup DC Alliance              *9AM*
Subscriber Name:         Johnson, Jean
Subscriber DOB:          01/03/1977
Subscriber No:           70064404
Subscriber Group No:
Subscriber Address:      29 46TH ST SE, APT 8, WASHINGTON, DC, US 20019-8433
Subscriber Phone:        202-394-3037

**Insurance(Dental) Information**

Insurance Name:          Avesis Amerigroup Alliance Dental
Subscriber Name:         Johnson, Jean
Subscriber DOB:          01/03/1977
Subscriber No:           70064404
Subscriber Group No:
Subscriber Address:      29 46TH ST SE, APT 8, WASHINGTON, DC, US 20019-8433
Subscriber Phone:        202-394-3037

**Referral From Information:**
Provider Name:           Darnell, Jacob
Provider ID Number:
Provider UPIN:
Provider NPI:            1700467537
Provider Facility:       Upper Cardozo Health Center
Provider Speciality:     Family Medicine
Address1:                3020 14TH ST NW
Address2:
City, State, Zip:        WASHINGTON, DC, 20009-6865
Phone:                   202-469-4699
Fax:                     202-548-8650

**Referral To Information:**
Provider Name:           MedStar National Rehabilitation Hospital
Provider ID Number:
Provider UPIN:
Provider NPI:
Provider Facility:
Provider Speciality:     Physical Therapy

JOHNSON, Jean **DOB:** 01/03/1977 (46 yo F) **Acc No.** 300035070

| | |
|---|---|
| Address1: | 102 Irving Street NW First Floor |
| Address2: | |
| City, State, Zip: | Washington, DC, 20010 |
| Phone: | 202-539-1418 |
| Appt. Date/Time: | |
| Fax: | 202-722-4156 |

← Call

Facility Tax ID Number:

# REFERRAL

Jacob T Darnell, DO
Family Medicine
**Upper Cardozo Health Center**
3020 14TH ST NW , WASHINGTON, DC-20009-6865
Tel: 202-469-4699  Fax: 202-548-8650

Jean Johnson
01/03/1977

---

## Reason For Referral:

**Authorization No:**                              **Authorization Type:**

Reason:                   46yo F w/ leg pain 2/2 to sciatica and OA. Please assist

Diagnosis:              M54.32 - Sciatica, left side

E/M Codes:

Procedures:           99242 - Initial Consultation

Visits Allowed:       3

Unit Type:            V (VISIT)

Start Date:           07/17/2023

End Date:            07/17/2024

*Jacob Darnell D.O.*

Provider NPI:         1700467537

Electronically signed by Jacob T Darnell, DO on 07/17/2023 at 11:37 AM EDT



**QUALITY OF LIFE SERVICES**


**HEALTH CARE**

3020 14th Street NW, Washington, DC 20009 Phone: (202) 469-4699
www.unityhealthcare.org  **Upper Cardozo Health Center**

*"We Treat You Well"*

| |
|---|
| I have consulted with and/or examined the patient named below and certify that he/she: |
| ☒ was seen at this clinic on **12/7/22** |
| ☐ is sick and should remain at home until _____ (inclusive). |
| ☐ may return to work/school with the following restrictions until _____ |
|     ☐Light duty only |
|     ☐No physical education |
|     ☐Lifting limited to _____ pounds |
|     ☐No recess |
|     ☐Other _____ |
| ☐ is able to begin or return to work/school without restriction. |
| ☐ tested PPD Negative on _____ |
| ☐ tested PPD Positive on _____ |
|     CXR Negative for TB on _____ |
|     Start(s)(ed) treatment on _____ |
| Remarks: |
| ☒ needs to keep follow-up appointment in **4-6** days/weeks. |
| Patient has chronic sciatica and patellofemoral syndrome of |
| R leg. Can not be standing for over 4 hours without pain |
| |
| Provider Signature |

*Patient Name:  Jean Johnson  DOB: 01/03/1977*

*Site:  Upper Cardozo Health Center, 3020 14th Street NW Washington, DC  20009*

Unity Health Care, Inc
Upper Cardozo Health Center
3020 14th Street, NW
Washington, DC 20009



**QUALITY OF LIFE SERVICES**



Upper Cardozo Health Center

3020 14th Street NW, Washington, DC 20009 Phone: (202) 469-4699
www.unityhealthcare.org   Upper Cardozo Health Center

*"We Treat You Well"*

I have consulted with and/or examined the patient named below and certify that he/she:

☐ was seen at this clinic on ___7/17/2023___

☐ is sick and should remain at home until _____ (inclusive).

☑ may return to work/school with the following restrictions until ___See below___

    ☐ Light duty only

    ☐ No physical education

    ☐ Lifting limited to _____ pounds

    ☐ No recess

    ☐ Other ___Comment/Remark saction___

☐ is able to begin or return to work/school without restriction.

☐ tested PPD Negative on _____

☐ tested PPD Positive on _____

    CXR Negative for TB on _____

    Start(s)(ed) treatment on _____

Remarks:

☐ needs to keep follow-up appointment in __4-6__ days/weeks.

Patient has chronic sciatica and knee pain w/ associated patellofemoral syndrome. Patient cannot stand longer than 4 hours w/o pain

Provider Signature ___Jewel Daniell DC?,___

Patient Name:  Jean Johnson  DOB: 01/03/1977

Site:   Upper Cardozo Health Center, 3020 14th Street NW Washington, DC 20009

# Unity Health Ca
### YELLOW TEAM
3020 14th Street, NW
Washington, DC 20009

 Requested by HR



## Request for Accommodation Form

It is Sodexo Lievel's policy to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless the accommodation would impose undue hardship on the Company.

Date of Request: **06/22/2023** Unit Number: _____

Unit Name: **National Gallery of Art** State: **DC**

Division: _____

Employee Name: **Jean Johnson** Employee ID #: **343389**

Circle One in Each Category: Applicant / (Current Employee)   Manager / (Hourly)

Is the Request Verbal or (Written) (circle one)

Job Title: **Cashier / Attendant**

Reason for Request (attach any supporting documentation regarding limitations)
**Chronic Sciatica w/ prolonged/constant standing / movement. Severe back and right knee pain.**

Accommodation Requested (attach any supporting medical documentation)
**Frequent rest periods while standing during shifts.**

Employee/Applicant's Signature
*Jean Johnson*

Manager's Signature

Print Manager Name and Title below
_____

*To Manager:*

*Give a copy of this request to employee/applicant and retain original in a confidential file, separate from the personnel file.*



**QUALITY OF LIFE SERVICES**

# Accommodation Request Medical Inquiry Form

**To the Employee:** As we discussed, in order to continue the interactive process of exploring the options for accommodations, it is necessary to obtain information from your health care provider regarding your impairment and limitations. Please complete the top portion of this form and sign it. Give the form to your health care provider (along with a copy of your job description and work schedule or list of essential job functions and work schedule provided to you by your manager or Human Resources) to complete the remainder of this form. You or your health care provider should return the completed form within 15 days to: _____

Your Name: Jean Johnson    Today's Date: 7 / 17 / 2023
Your Signature: Jean Johnson    Your Current Position: Cashier / Attendant

**To the Health Care Provider:** For reasonable accommodation under the ADA, an employee has a disability if he or she has an impairment that substantially limits one or more major life activities or a record of such an impairment. This Accommodation Request Medical Inquiry Form is required to assist Sodexo in identifying a reasonable accommodation to the impairment of the above-named employee in order for him/her to perform the essential functions of the job. After a review of the job description or list of essential functions and work schedule for this employee's position, please complete this form and sign below.

Your Name: Jacob Darnell D.O.
Type of Practice: Family Practice
Address: _____
Telephone Number: 202-469-4699

Does the employee have a physical or mental impairment?[1] ✓ Yes ___ No

If yes, what is the impairment? Pain w/ standing extended periods of time

_____

_____



Activities : Cashier/attending - standing, stretching, lifting

[1] Note, "The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services."
March 2016





Is the impairment long-term or permanent?  X Yes _____ No

If *not* permanent, how long will the impairment likely last?  Expected Duration (weeks, months)

Unsure at this time.  Patient to complete physical therapy and then

be re-assessed

> Please answer the following questions based on what limitations the employee has when his or her condition is in an active state and what limitations the employee would have if no mitigating measures were used. Mitigating measures include things such as medication, medical supplies, equipment, hearing aids, mobility devices, the use of assistive technology, reasonable accommodations or auxiliary aids or services, prosthetics, and learned behavioral or adaptive neurological modifications. Mitigating measures do not include ordinary eyeglasses or contact lenses.

Does the impairment substantially limit a major life activity?  X Yes _____ No
*Note: Does not need to significantly or severely restrict to meet this standard*

If yes, what major life activity(ies) is/are affected?  *(Please check all that apply.)*

| Caring for Self | Walking | Hearing | Lifting | Other (describe) |
|---|---|---|---|---|
| Interacting with Others | Standing | Seeing | Sleeping | |
| Performing Manual Tasks | Reaching | Speaking | Concentrating | |
| Breathing | Thinking | Learning | Reproduction | |
| Working | Toileting | Sitting | | |

Does the impairment substantially limit the operation of a major bodily function?  X Yes _____ No
*Note: Does not need to significantly or severely restrict to meet this standard*

If yes, what bodily function is affected?  *(Please check all that apply.)*

| Immune | Hernic | Circulatory | Endocrine |
|---|---|---|---|
| Normal Cell Growth | Digestive | Lymphatic | Reproductive |
| Special Sense Organs & Skin | Bowel | Bladder | Genitourinary |
| Neurological | Brain | Special Sense | Respiratory |
| Musculoskeletal | Cardiovascular | Other (describe) | |

> An employee with a disability is entitled to an accommodation only when the accommodation is needed because of the disability. The following questions may help Sodexo determine whether the requested accommodation is needed because of the disability.

What limitation(s) is interfering with job performance?  *(Please explain.)*

Unable to stand for extended periods of time



**sodexo**
**QUALITY OF LIFE SERVICES**

**sodexo**

What job function(s) is the employee having trouble performing because of the limitation(s). *(Please explain.)*

Patient is unable to stand for extended periods of time

How does the employee's limitation(s) interfere with his/her ability to perform the job function(s)? *(Please explain.)*

Unable to stand for extended periods of time.

If an employee has a disability and needs an accommodation because of the disability, the employer must provide a reasonable accommodation, unless the accommodation poses an undue hardship. The following questions may help Sodexo determine effective accommodations.

Do you have any suggestions regarding possible accommodations to improve job performance? If so, what are they? *(Please explain.)*

Allow patient more frequent breaks and/or the
ability to sit during part of the day

How would your suggestions improve the employee's job performance? *(Please explain.)*

*March 2015*

D.O.
7/17/2015

**sodexo**
QUALITY OF LIFE SERVICES

**sodexo**

Any additional comments or suggestions?

Health Care Provider's Signature: _Jack Rassell DC_

Date: _7/17/2023_

*March 2010*

July 31, 2023

Attn: HR Manager, Morline Lynton

Upon reinstatement of my employment, I have made several attempts (with multiple managers) to communicate my availability which is Monday through Friday, until no later than 3:30PM, with no weekend availability. I have communicated this with each manager as I was instructed to, including HR, and have continued to be scheduled outside of my availability. This has resulted in several shift call outs as it has caused conflict in my schedule. With all transparency of my current availability, and health issues, I have not been properly nor fairly accommodated for either. As of today July 31st, 2023, I respectfully resign my position with the company.

Jean Johnson

I, Aaron Beaver, am the Food Services Manager at the National Gallery of Art (the "National Gallery"). On April 12, 2023, I received a phone call from Isabelle Raval, Associate General Counsel, Office of the Secretary & General Counsel, National Gallery. Ms. Raval is the attorney whom I work with on food services contracts at the National Gallery. During my phone call with Ms. Raval, she told me that one of the other attorneys in her office, Katie DeMamiel, contacted her in response to an incident that had just occurred in the Terrace Café.

Specifically, Ms. Raval told me that Ms. DeMamiel said that she had gone to the Terrace Café to purchase lunch. Ms. DeMamiel was attempting to purchase a salad and a drink from the on-duty cashier (now identified by Sodexo as Jean Johnson). Ms. DeMamiel told Ms. Raval that the cashier was on the phone making disparaging statements about Sodexo while she rang up visitors and employees. Ms. DeMamiel said there appeared to be some difficulty with the cashier ringing up her food and drink, and she was only charged for the drink; she told Ms. Raval that the cashier told her she could have the food (implying she did not have to pay for it). Ms. DeMamiel told Ms. Raval that it was probably not a good idea to have a person talking badly about Sodexo in front of visitors and employees.

According to Ms. Raval, Ms. DeMamiel took the food and drink back to her office and notified Ms. Raval of the incident. Ms. Raval determined the best course of action was for Ms. Raval to reach out to me since I am the Contract Officer's Representative (COR) for the Sodexo Live! food service contract so that I could inform Sodexo about the incident.

Ms. Raval told me that Ms. DeMamiel would like to pay for her food because she felt uncomfortable receiving a free meal as a National Gallery employee. I told Ms. Raval that I would be in touch with Ms. DeMamiel and the General Manager from Sodexo Live!, Katie Randall, to inform Ms. Randall of the incident and to arrange for Ms. DeMamiel to pay for her food.

Subsequent to my conversation with Ms. Raval, I contacted Ms. DeMamiel and spoke with her. I then contacted Katie Randall via phone to describe the incident with Ms. Katie DeMamiel and the on-duty cashier at the Terrace Cafe.

After detailing the incident to Ms. Randall, I provided her with the contact information for Ms. DeMamiel, and requested that she coordinate payment for the food received.

I also made a recommendation to Ms. Randall to assess the temperament and behavior of the cashier and make a determination if, for that day, the cashier should be removed from her position interacting with visitors and National Gallery staff.

I followed up with Ms. Randall later in the day to ensure that she was able to coordinate payment with Ms. DeMamiel, and she stated she was able to. Ms. Randall also stated that she had made the decision to remove the cashier from her shift that day and suspended her pending investigation.

Aaron Beaver

Date: 6/8/23

## Statement

My name is Katherine DeMamiel, and I am an Assistant General Counsel at the National Gallery of Art (the "National Gallery"). My office is located on the 6th floor of the National Gallery's East Building, and I work from my office on Tuesdays and Wednesdays most weeks.

On Wednesday, April 12, 2023, I went to the Terrace Café (the "Café") on the East Building's 4th floor to pick up food for lunch. I do not recall the exact time, but I usually do this around noon. On this day, I picked up a salad, bag of chips, and a soda. While I was selecting my food, I noticed that the woman working behind the check-out counter was speaking in an animated and loud voice, saying "they have really pissed me off now." My impression was that she was speaking about her employer, and she was speaking loudly enough and with enough animation that it caught my attention. There were other guests (who I assumed were National Gallery visitors) present in the Café as well.

After I selected my food, I went up to the counter to pay. When the woman rang up my food, I noticed that the total was only the cost of the salad, and I told her that I thought she had not included my chips and soda in the total. The woman made an exasperated noise and initially pressed some buttons on the register and card machine (presumably to try to back out the order and enter the correct order), but when the machine did not initially respond, she told me to just pay for the salad and take the chips and soda. I told her no, that I would be happy to wait and pay for all my food, but she again said I should just pay for the salad and go, this time more insistently. She was also getting more animated (i.e., she was getting louder and making more gestures), expressing that she was frustrated and angry with someone (I assumed her employer or a specific person at her job) and with the checkout machines. I got the distinct impression that she would continue or increase this behavior if I kept insisting that I would wait to pay for my food.

At this point, not wanting to cause a scene in front of the guests at the Café, I paid the amount on the register (which was just for the salad), took my salad, chips, and soda, and returned to my office. I then contacted Isabelle Raval, an Associate General Counsel at the National Gallery who I knew worked closely with our food services team. Isabelle put me in touch with Aaron Beaver, our Food Services Manager, who then put me in touch with Katie Randall, our Sodexo manager. Ms. Randall came to my office, collected my credit card, charged it for the chips and soda, then brought my card and a receipt back to me.

I did not know the name of the woman working behind the counter during the incident described above, but I recall that she was a tall, slender African American woman wearing some kind of wrap around her hair and dark clothing. I gave this description to both Aaron Beaver and Katie Randall when I spoke with them the same day after the events described above.

DocuSigned by:

*Katherine Diane Demamiel*

6F3G6E8DC4384B8...

Katherine DeMamiel

6/8/2023

Date: _____

April 12, 2023

Time: 12:07 pm

Katie Randall the General Manager of Sodexo received a phone call from Aaron Beaver the Food Service Manager in the Office of the Treasurer at the National Gallery of Art stating that the employee at Terrace café just gave away free food for a National Gallery of Art employee. Aaron asked Katie to contact the employee via phone because no gallery employee can accept free food because they are federal employee. Aaron also mentioned that Jean was talking on the phone while working at the cash register, in a foul mood and should be removed. Katie Randall called Katie DeMamiel Assistant General Counsel whose office is on the 6th floor. Katie Randall went up to the 6th floor to grab Katie DeMamiel credit card to be able to ring up the soda and the bag of chips. Katie DeMamiel expresses to Katie Randall that she can't accept free food and please ring up her items. Katie Randall came down to Cascade to ring up the items and brought the credit card and receipt upstairs.


Jean was asked to see Morline along with a shop steward to discuss the incident.

Jean admitted in the presence of Netsanet, that she was on the phone speaking to her cousin,

and I quote "I can't take this anymore, they don't know what they are doing" Jean began talking about other issues that were relevant to the situation and she was asked to go home pending further investigation.

06/19/2023 – Communication, via text message, to Catering/scheduling Manager regarding my availability of Two days a week, Monday – Friday, until 3:30PM and with no weekend availability. The change in my availability stems from Full Time employment gained. Catering/scheduling Manager responds saying communication will be relayed to HR. 07/30/2023, my schedule has yet to reflect given availability, availability not honored as are other employees of the company.

06/21/2023 – employee use of personal phone while at POS system (video call with daughter). My POS system goes offline (1:34PM) in transaction process with guests. Ass. GM resets machine. I sent guests to checkout with another employee. Employee questions guests total purchase, I inform of 10% senior discount given. Upon returning my till draw for deposit count HR informs me, in her office in the presence of the Ass, GM who'd assisted with my machine, to allow all guests to ask about the discount before applying (3:20PM), something I have never been instructed to do.

06/22/2023 – Upon starting my shift I receive my card for POS #2. I ask if I could get #3 and was told by another manager in the office that the Ass. GM gave specific instructions to place me at POS #2. No other employee has an assigned system and I have not been assigned a specific system before being reinstated. Employee eating at POS system while on shift in presence of 3 Managers. I have been told by multiple managers, including HR, that I am not allowed to eat at my system. Overhear employee instructing guests to retrieve employee containers to conceal food item and take out of Café area (prohibited behavior and against museum policy to exit Café with any food or drink items – there is signage at both entrances/exits – 1:28PM).

07/04/2023 – 10:45AM, employee use of personal phone in presence of 2 Managers.

07/18/2023 – At 9:04AM I arrive to Gelato to start, after returning medical documents to GM, no other employee is on shift there. Ass. GM comes over and instructs me on where to start, says he will return shortly. Ass. GM does not return. GM and interning employee arrive and assist with setting up Gelato Bar. No employee arrived for shift until after 10AM. While behind Gelato Bar, sitting on a counter to rest my back and knee, I happen to turn around and the Ass. GM was just standing behind me on my back, silent, and with me unaware of how long he'd been standing there. The Manager was so close I felt uncomfortable enough to ask why he had walked up on me the way he did.

07/18/2023 – I, once again, reach out to a manager regarding my availability being honored (Ass. GM). I explained the reason and that I had to end my shift by 3:30PM. I was told that "I have to do what I have to do."

07/31/2023 – Since my reinstatement, I have not felt comfortable while at this place of employment. Every shift I have worked I have noticed that the Ass. GM has stood around watching me, on and off, from different locations within the Café I am assigned. This manager silently stood behind me while stationed at the Gelato Bar. An associate has made strange comments to me, asking if I ever learn (referring to my termination and reinstatement). Neither my availability nor seniority has been honored since returning to my position.

During a Zoom meeting with HR, the GM, and my Union Rep. (06/15/2023), HR made a false claim that I had admitted to giving away food items in my counseling meeting on 04/12/2023. I made no such admittance and clarified that I had only admitted to being on my phone while at my system (I was not terminated for what would have clearly been intentional theft and automatic grounds to bypass all disciplinary actions). During this same meeting HR attempts to admit anonymous statements claiming that I'd been witnessed giving away food items. My Union Rep then stated to HR that attempting to provide any documentation regarding the case would be a serious problem, as all documents requested during the previous meeting should have been submitted together. In a Zoom meeting with HR and my Union Rep (05/05/2023), HR stated that the client had barred me from the premises of the National Gallery of Art. According to the client's statement that the Union Rep and I received, I was not barred from the National Gallery of Art.

During my counseling meeting with the HR and Ass. GM on 04/12/2023, I informed both managers that I had scanned the items and the client tapped their card but that the system had gone offline, again, due to losing its WIFI connection and that I had followed my regular steps in this situation. I informed the guests of my system failure and waited before attempting to reset it. When the system was back online the transaction failed shortly after. The guest had left the area when I looked up from the system to inform her of the failure.

I have communicated all my concerns with both my Union Representatives, via email, and have not received any communication from anyone since 07/11/2023. I tried via email on 07/12/2023, with no response yet. I do not feel, at this point, that I am being properly represented by my Union, for which I have been paying Union dues.

With absolute transparency of my availability, seniority, received medical forms and accommodation request and these things not being honored nor being honored in a timely manner that reflected my scheduled shifts, I have opted to give my resignation to the company. The needs of the company do not align with my own nor with my goals, in addition to the needs of the company causing conflict within my schedule.

I have hard copies of all documents and evidence to prove my claim.


07/31/2023 – I was forced to respectfully resign from the company, Sodexo Live via email communication with the HR Manager, due to non-adherence of my availability given to the HR Manager, the Assistant GM, and the Catering/Scheduling Manager. I, initially, gave my new availability to the Catering/Scheduling Manager on June 19, 2023, via text message. My communications with all managers were ignored and I was continuously being scheduled outside of my availability, up my resignation.

April 12, 2023

Time: 12:07 pm

Katie Randall the General Manager of Sodexo received a phone call from Aaron Beaver the Food Service Manager in the Office of the Treasurer at the National Gallery of Art stating that the employee at Terrace café just gave away free food for a National Gallery of Art employee. Aaron asked Katie to contact the employee via phone because no gallery employee can accept free food because they are federal employee. Aaron also mentioned that Jean was talking on the phone while working at the cash register, in a foul mood and should be removed. Katie Randall called Katie DeMamiel Assistant General Counsel whose office is on the 6th floor. Katie Randall went up to the 6th floor to grab Katie DeMamiel credit card to be able to ring up the soda and the bag of chips. Katie DeMamiel expresses to Katie Randall that she can't accept free food and please ring up her items. Katie Randall came down to Cascade to ring up the items and brought the credit card and receipt upstairs.

Jean was asked to see Morline along with a shop steward to discuss the incident.

Jean admitted in the presence of Netsanet, that she was on the phone speaking to her cousin,

and I quote "I can't take this anymore, they don't know what they are doing" Jean began talking about other issues that were relevant to the situation and she was asked to go home pending further investigation.



sodexo
QUALITY OF LIFE SERVICES

I Sharon Howard has witnesed on several occatoon the customer would go to the register behind me which was raned by Sean my coworker. I have seen her tele customers this is free you don't have to pay for this.

Sharon Howard
June 13, 2023

dated 2 days before mtg but requested, a was prior

I would be asleep at POS system!

**sodexo**
**QUALITY OF LIFE SERVICES**

I who would like to stay anonymously but I would like to inform Sodexo Live that I have witness Jean curse in front of customers which is embarrassing. Jean has been on her phone multiply times listening to music, singing, dancing, and talking on the phone. I was informed she would waive the security guards over to her line and she would not be ringing up items and they would meet up after work to provide Jean with the difference from the free food provide to them.

**Statement provided by Legacy Winters:**

To whom it may concern,

My name is Legacy Winters and I have known Ms. Jean Johnson for 10 years. In the time that I have known Ms. Johnson, I have known her to be a very pleasant person. Ms. Johnson has a kind spirit and is always smiling and joking. We became friends through a social media platform in 2011 and have been very good friends since. Ms. Johnson and I have never had a disagreement, an argument, nor have we ever had any bad words to say to one another.

Ms. Johnson would discuss her seniority not being adhered to, in addition to the pain she had been experiencing due to not being medically accommodated during her 8 hour standing shifts. Ms. Johnson also discussed how there was an extreme issue with communication between management and employees regarding their assigned stations and newly created positions she would not have information on until she inquired about it with the scheduling manager.

Ms. Johnson has discussed how the company had implemented a new cell phone policy and how many of the employees were not adhering to the policy, many of the employees would be on their phones using earbuds, and video chatting while on the clock. She discussed how, on several occasions, that management would inquire with her about the whereabouts of other employees who were not at their assigned location. Ms. Johnson also discussed issues regarding the HR Manager very rarely being present at the work site for employees who needed HR assistance.

Ms. Johnson and I would discuss these issues during her break periods while at work and during her private time outside of work.

Please feel free to contact me if you have any questions.

Thank you,

Legacy Winters

(240) 306-8189

Legacy_Winters@yahoo.com

**Statement of Natasha Alston for the event that occurred on 04/12/2023, involving Jean Johnson**

Jean and I were on the phone the morning of April 12, 2023, and she was working at the Terrace Café within the National Gallery of Art Museum. Jean was upset over the current working conditions in which the employees were now enduring since the company switch on 10/01/2022 (Sodexo Live). Jean was also upset due to having work a float position she was unaware of until arriving to work and getting settled at her usual station, which is the Cascade Café, in addition to her seniority not being honored (as is the seniority of other employees) over an employee whom she has seniority above. While at the Terrace Café and checking out a client of the establishment, Jean joked about giving away all the company's food items, saying she was over the working conditions, and we both laughed. Jean scanned the client's food items and allowed the client to pay for the purchase. I then heard Jean tell the client that her system had gone off-line and was stuck at the processing point. Jean explained that she would wait, as usual when this occurs, and see if the system goes back on-line. It did after a couple of minutes and Jean proceeded to tell the client to have a good day. The client responded the same and I assume walked away with her purchase. Jean then says to me that the purchase didn't go through and that she had to void it out because the client was no longer in the area. Jean then proceeded to check out the guest in line. I overheard the guest say he would give Jean cash because of the system failure with the last transaction. Jean was not animated, nor loud, as the client's (Katherine DeMamiel) statement indicates. Jean was not forceful in any manner, nor insistent, and from what I could hear on my end, Jean was pleasant and provided the proper service and resolution to the system error. The client (Katherine DeMamiel) claims that Jean expressed frustration, but I did not sense any such behavior from Jean. I have known Jean for more than 25 years and I have never known Jean to exhibit this type of behavior in the workplace. Jean has been so pleasant to the guests and the clients of the establishment that she was personally invited to the National Gallery of Art's Christmas Party this past December (12/2022) by one of the employees. Jean was the only employee of Sodexo Live who was extended an invitation to the Christmas Party, and Jean graciously accepted and attended.

Natasha Alston

(202) 567-0280

Aleece1172@gmail.com

Please feel free to contact me regarding any questions and/or concerns.

**Statement of Natasha Alston in response to Volume Services' Position Statement**

This is in addition to my previous statement submitted on 09/03/2023. I have read the position statement provided by Ms. Johnson's previous employer, in addition to reading the witness statements provided and I must say that the times Jean and I would speak on the phone would be during her 15-minute rest periods and her 30-minute meal breaks. Jean and I would speak on the phone every day, discussing her working conditions and how bad things had become at her job site.

I have not spoken to Jean while she was on the employer's clock on any occasion beyond the occurrence on April 12, 2023. When Jean and I would speak on the phone there were several discussions regarding the employer not accommodating her in accordance with her doctor's note (given to her employer on 12/2022 and 07/2023). Jean would often complain about back and knee pain and how it was difficult for her to stand upright most days. We also discussed how her pain was affecting her personal life outside of work and how this prevented her from being able to deal with her personal affairs. Jean would often inquire with me about pain alleviation so she would be able to work without calling out. Jean would ask my advice on how to best handle the situation of her lack of accommodation with her managers as well.

Jean and I discussed a current employer who was being accommodated regarding her PT availability, in addition to Jean's seniority not being adhered to, over said employee, or honored when being scheduled. This current employee, I believe, has provided a statement for the company under false pretenses, and containing falsified information, regarding Jean being on her phone while at her assigned POS system. Jean and I had a conversation regarding this employee in which a guest waiting to check out had to be checked out by Jean due to this employee having her head down looking at her phone screen. This occurred in the presence of the GM (Katie Randall) who was standing beside Jean's POS system at the time. If I remember correctly, this employee was suspended for violating company policy by being on her phone.

I have had discussions with Jean regarding multiple employees being on their phones, either talking or video chatting, while working their shifts. Jean and I discussed how many of the employees were violating multiple company policies, including eating food items outside of their free breakfast or lunch meals, openly being on their phones in the presence of managers, repeatedly leaving their assigned stations without manager approval or employee coverage, and eating food items that were not paid for in the

presence of, and while checking out, guests. We also discussed how there was internal employee theft occurring regarding the alcohol beverages in the café areas.

Jean would call me after finishing her shifts and we would discuss the day's events or just talk about things in general as she traveled home. I have never overheard Jean and any other employee discussing the exchange of money for items she'd given away for free. These accusations did not arise until after Jean filed a complaint against the company with the EEOC. Jean has never been disciplined in any manner, investigated for any violation or cause, had any complaints or reports filed against her for improper customer service, theft or for displaying or verbalizing vulgar language in front of or around any employees or guest of the worksite.


Natasha Alston

(202) 567-0280

Aleece1172@gmail.com

Please feel free to contact me regarding any questions and/or concerns.

October 4, 2023

**Statement of Desa Alston**

My name is Desa Cooke and I have known Ms. Johnson since my young childhood. I have never known Ms. Johnson to be dishonest nor to be disrespectful to anyone, especially within her place of employment. I have had multiple conversations with Ms. Johnson regarding her previous working conditions since her contracted employer switched companies in October 2022.

I visited Ms. Johnson at one of her previous employer's locations (Amazon 4-star Retail, before their closure in March 2022) and as I shopped, I witnessed Ms. Johnson's demeanor to be pleasant, kind, and very engaging when dealing with guests. I have witnessed Ms. Johnson with my own children and trust them completely to be in her care.

On one occasion I can recall Ms. Johnson forgetting that she had an item in the bottom of her cart and upon realizing this after leaving the store, Ms. Johnson grabbed the item, walked back into the store, and paid for it.

I have never known Ms. Johnson to commit intentional or unintentional employee theft, and for as long as I've known Ms. Johnson I have yet to know or hear of her being suspended or terminated from any job she's worked.


Please feel free to contact me if you have any questions or concerns.

Thank you,

Desa Alston

(202) 534-8743

Arianna327@gmail.com





4:45    ⊖ 5G UC ◿ 🔋85%

≡̇    **July ▼**    📅25

**My schedule**    Full schedule    Available

◀   12   13   14   15   16   17   18   ▶
     ●                                        ●

12 - 18 Jul              12h 15min

| **12** WED | **10:45 AM – 3:30 PM • 4h 15min** Centerplate • Cascade |
|---|---|
| **13** THU | **Time off** All day |
| **14** FRI | **Time off** All day |
| **15** SAT | **Time off** All day |
| **16** SUN | **Time off** All day |
| **17** MON | **Time off** All day |
| **18** TUE | **9:00 AM – 5:30 PM • 8h** Centerplate • Gelato |

⫽    ⠿    ▣    ≡
Dashboard    Shifts    Newsfeed    More



**4:45** ⊖ 5G UC ◢ 🔋 85%

☰ July ▼ 📅

**My schedule**    Full schedule    Available

◀   19    **20**    21    22    23    **24**    **25**   ▶

19 - 25 Jul       12h 45min

**19** WED — **Time off** All day

**20** THU — **10:45 AM – 3:30 PM • 4h 45min** Centerplate • Cascade

**21** FRI — **Time off** All day

**22** SAT — **Time off** All day

**23** SUN — **Time off** All day

**24** MON — **9:00 AM – 5:30 PM • 8h** Centerplate • Gelato

**25** TUE — **Time off** All day

Dashboard    Shifts    Newsfeed    More



4:45   ⊖ 5G UC ⊿ 🔋 85%

⇄   July ▼   📅25   ⋮

**My schedule**   Full schedule   Available

◀   26   27   28   29   30   31   1   ▶
                              •    •

26 Jul - 1 Aug                    12h 45min

| 26 WED | **Time off** All day |

| 27 THU | **Time off** All day |

| 28 FRI | **Time off** All day |

| 29 SAT | **Time off** All day |

| 30 SUN | **10:45 AM – 3:30 PM • 4h 15min** Centerplate • Cascade |

| 31 MON | **9:00 AM – 5:30 PM • 8h 30min** Centerplate • Gelato |

| 1 TUE | **Time off** All day |

⋰  Dashboard   ⦙⦙⦙ Shifts   ▱☰ Newsfeed   ☰ More

## Counseling Notice:

### EMPLOYEE DATA:

Employee: _____ *Johnson* _____ *Jean* _____ _____
Last / First / Middle

Department: _____ *Conessions* _____ Position: _____ *Gelato* _____

**EMPLOYEE N**

### SPECIFICS OF THE COUNSELING:

| Date of Warning: | Date of Violation: | Time of Violation: |
|---|---|---|
| *6/15/23* | *4/12/23* | : |

Location of Violation: *Terrace Outlet*

Has the employee been previously counseled? ☐ Yes ☒ No

Type of Warning: ☐ Verbal ☒ Written

Dates of Prior Counseling:
(month, day, year)  _____  / / _____
/ /  / /

### ACTION TO BE TAKEN NOW:

☐ Oral Warning ☐ Probation
☐ Written Warning ☐ Suspension (Pending Investigation)
☐ Dismissal ☒ Other: *Second Warning*

Employer Statement (Insert facts supporting counseling):
*Jean is receiving this second warning for her behaviour on April 12, Jean was talking on her cellphone at her workstation and was speaking ill about the company. Jean's handling of the credit card payment and customer service were poor and unacceptable. Any further behaviour of this nature will lead to suspension up to and including termination from Sodexo Live!.*

**REASON FOR COUNSE**

☐ Absenteeism
☐ Tardiness
☐ Carelessness
☐ Clocking out Early/Clock Vi
☐ Unapproved overtime
☐ Disobedience/Insubordinati
☐ Failure to Follow Instructior
☐ Intoxication/Violations of Dr
☐ Inappropriate Behavior to C
  or Poor Customer Service
☐ Falsification of Records/Do
☐ Unsatisfactory Work Quality
☒ Violation of Company Polici
☐ Violation of Safety Rules or
☐ Willful Damage to Property
☐ Working on Personal Matte
☐ Obscene, Abusive or Threa
☐ Leaving Work Area
☐ Violence or Threat of violen
☐ Unauthorized Removal or A
  to Remove Company or Cli
☐ Other: all

NOTE: THE ACTION TAKEN PURSUANT TO THIS COUNSELING NOTICE DOES <u>NOT</u> ALTER THE EMPLOYI
ALTER THE COMPANY'S RIGHT TO TERMINATE THE EMPLOYEE AT ANY TIME IN ITS DISCRETION.

Employer Name (Print): _Morline Cynter_ Employer Signature: _Morline Cyster_ Date: 6/21/23

Witness Name (Print): _Ikhalee_ Witness Signature: _____ Date: 6/21/23
If One Present

### EMPLOYEE STATEMENT:

_____ I **AGREE** with Employer's Statement. _____ I **DISAGREE** with Employer's stater
(Initial) (Initial)

Employee Statement:

_Jean Johnson_

I have read

Employee Name (Print): _Jean Johnson_ Employee Signature: _Jean Johnson_ Date: 06/21/23
Translator Name (Print): _____ Translator Signature: _____ Date:
If Applicable

# ounseling Notice:

**EMPLOYEE DATA:**

*sodexo live!*

Employee: **Johnson**   **Jean**
 　　　　　Last　　　　　　First　　　　　　Middle

Department: **Concessions**   Position: **Worker**

**EMPLOYEE NO:**
**343389**

## SPECIFICS OF THE COUNSELING:

| Warning: | Violation:<br>**4/12/23** | Violation:<br>**12:10 PM** |
|---|---|---|

Location of Violation: _____

Has the employee been previously counseled?  ☐ Yes  ☒ No

Type of Warning:  ☐ Verbal   ☐ Written

Dates of Prior Counseling:
(month, day, year)  _____  _____  / /  _____  / /

### ACTION TO BE TAKEN NOW:
☐ Oral Warning   ☐ Probation
☐ Written Warning   ☐ Suspension (Pending Investigation)
☒ Dismissal   ☐ Other: _____

Employer Statement (Insert facts supporting counseling):
**Jean is**

NOTE: THE

**REASON FOR COUNSELING:**
☐ Absenteeism
☐ Tardiness
☐ Carelessness
☐ Clocking out Early/Clock Violations
☐ Unapproved overtime
☐ Disobedience/Insubordination
☐ Failure to Follow Instructions
☐ Intoxication/Violations of Drug Policy
☒ Inappropriate Behavior to Customer/Clients
 or Poor Customer Service
☐ Falsification of Records/Documents
☐ Unsatisfactory Work Quality/Quantity
☐ Violation of Company Policies
☐ Violation of Safety Rules or Horseplay
☐ Willful Damage to Property
☐ Working on Personal Matters
☐ Obscene, Abusive or Threatening Conduct
☐ Leaving Work Area
☐ Violence or Threat of violence
☐ Unauthorized Removal or Attempt
 to Remove Company or Client Property
☐ Other:

Employer Name (Print): _____   Employer Signature: _____   Date: _____

Witness Name (Print): _____   Witness Signature: _____   Date: _____
If One Present

**EMPLOYEE STATEMENT:**
_____ I **AGREE** with Employer's Statement.   _____ I **DISAGREE** with Employer's statement.
(Initial)　　　　　　　　　　　　　　　　　(Initial)

Employee Statement: _____

I have read

Employee Name (Print): _____   Employee Signature: _____   Date: _____

Translator Name (Print): _____   Translator Signature: _____   Date: _____
If Applicable

Middle

**EMPLOYEE N** 
343

_Worker_

ne of Violation:
**12:10 PM**

**REASON FOR COUN**

- [ ] Absenteeism
- [ ] Tardiness
- [ ] Carelessness
- [ ] Clocking out Early/Clock
- [ ] Unapproved overtime
- [ ] Disobedience/Insubordin
- [ ] Failure to Follow Instructi
- [ ] Intoxication/Violations of
- [x] Inappropriate Behavior t
- [ ] or Poor Customer Servic
- [ ] Falsification of Records/D
- [ ] Unsatisfactory Work Qua
- [ ] Violation of Company Po
- [ ] Violation of Safety Rules
- [ ] Willful Damage to Proper
- [ ] Working on Personal Ma
- [ ] Obscene, Abusive or Thr
- [ ] Leaving Work Area
- [ ] Violence or Threat of viol
- [ ] Unauthorized Removal o
- [ ] to Remove Company or
- [ ] Other:

[ ] Yes [x] No

[ ] Written

/ /        / /
/          / /

bation
uspension (Pending Investigation)
other:

supporting counseling):
_exo Live for her dismissive attitude to client,_
_n the phone in a very negative way , while using_
_leave without finishing to pay for the food she_

N PURSUANT TO THIS COUNSELING NOTICE DOES <u>NOT</u> ALTER THE
ATUS OR ALTER THE COMPANY'S RIGHT TO TERMINATE THE EMPLO

Employer Signature: _____        Date:

Witness Signature: _____        Date:

**IENT:**
with Employer's Statement. _____ (Initial)    **I DISAGREE** with Employer's state

nt: _____

d it.  I also realize that further misconduct may result in additional discipline up to and inclu

04/12/2023

Counseling with Ass GM/HR Manager. Suspended pending investigation regarding allegations of knowingly commiting theft (giving away food items- salad, chips, drink).

04/14/2023

Terminated

04/14/2023

Meeting with HR Manager/Union Rep. Terminated due to poor customer service. No results presented regarding investigation.

Aaron Beaver stated to terminate!

"Noted Accounts of events I witnessed after being reinstated."

"Events of 04/12 - 07/31/2023"

~~09/09/83~~
~~New - Thunder Noises~~
~~Buzzing Noises.~~

04/12/2023

* Counseling with HR Manager / Ass. GM. Accusation of theft (knowingly giving away food items).
   - Salad / Chips / Drink.
   - Suspended pending investigation of accusation.
   - HR Manager informs me that employees at Gelato Bar were overheard by guests and other employees, stating how they "Hated Sodexo" and that she had received a phone call about the incident.
      - No employee received any form of discipline.

04/14/2023

* Meeting with HR Manager and Union Steward (                    ) where employment was terminated due to poor customer service.
   - Requested meeting with Union Rep through Union Steward, to file a greivance against company.

04/01/2023

* Contacted Union Steward regarding Union meeting through text message (6:19 PM).
- Received text communication from Steward containing Union Reps contact name/number (04/05/2023).

4:03 PM).

* Virtual Zoom meeting with Union Rep (Sarah / HR Manager) (05/05/23).
- He informed Sarah and myself that I had been barred from the buildings of my employment by client of company.
- Sarah - Union Rep requests all documents regarding counseling, client statement on being barred, and termination.
- He Manager states that I both, 
* Did not ring up the guest purchase and did not bother to ensure that the guests purchase had processed.

05/15/2023

* Contacted Union Rep, via text, inquiring about updates regarding case/documents requested.
  - Statement from client.
- HR Manager communicates with Union Rep that I was, indeed, barred from place of employment.

* Contacted Union Rep inquiring about updates on case (05/26/23).
  - Response from Union Rep (06/01/2 stating that she is awaiting documents from HR Manager, in regards to my being barred, "statement from client".
  - HR Manager stated documents would be sent - week of 06/01/2

* I contacted Union Rep in regards to case, informing of time that has passed with no progress made.
  - Response from Union Rep.
    - Awaiting documents - Rep has stated she's been requesting

documents repeatedly with no
progress. ~~[crossed out]~~
Stated they (company) would
respond (06/12/23).
- Union Rep in process of moving
  to next step of greivance.

* Union Rep communicates that there
  will be a meeting soon (next
  step greivance meeting) on 06/15/23.
  3PM.
  - HR Manager makes false
    statement against me- Jean
    owned/admitted to giving away
    food items on 04/12/2023.
  - I stated that I admitted to no
    such accusation but to only
    being on my cell phone while
    on the clock.
  - I asked about my being
    disciplined and receiving a
    written second warning-
    in regards to other employees
    committing the same infraction

with no disciplinary action, verbal or written, received.

- GM States: We're talking about you, Jean!

* HR Manager attempts to admit anonymous statements, as documentation of proof / evidence, after documents were requested and received by Union Rep.
  - Union Rep informs HR Manager of severity of with-holding requested documents / entering documents at a later stage would be a huge problem, and illegal per the Union Contract.

* 06/21/2023
  - Cleo motions all guest to pass me and approach her at POS system behind me.
  - Sharon on phone texting. Answers phone call. Call with daughter.
  - Ron counted draw this morning. $0.07 short.
  - POS 2. Goes offline, 1:34-1:40PM, during transaction processing. Had to reset chip reader. Waited. Reset monitor, sent guests to another employee for check out.
    - Ass. GM asks what's wrong. I inform that my system went down again.
    - Discount was given as senior 10% off. Ass. GM informs He Manager about incident. He instructs me, at end of my shift, to allow all guests to inquire/ask about the discount first ( 3:30 PM ).

* 06/30/03 - 10:46 AM

- Ren informs me that Ass. GM
instructed him to place me at -
a front register. No other
employee has an assigned
register, nor are made to sit
at a designated register.
(Cleo sits behind me to watch
my actions.)
- 1:08 PM - Cleo tells a guest he
can get a take out container,
which is designated for employee
use, to pack of his leftover
fries and place in his bag as he
hours our place of employment.
- It is a violation to instruct
guests to do this and to take
food items out of the Cafe area.
- There are signs stating this
in multiple areas of the Cafe.
- Cleo watches all approaching
guests to by pass me and to
come to her for check out.

* 06/22/2023- Utility Supervisor
discussing employee personal
info with another employee.
Regarding her mental state and
her reason for needing to leave
work. The employee crying and
being upset was discussed as
well.

* 04/14/2023- I was informed by HR
Manager that the decision to
terminate originated from
Aaron Beaver · Food Service
Contractor Manager for NGA - Not an
employee of Sodexo Live.

* 06/21/2023- Employee verbalizing
indirect threats regarding
slapping another employee.

* 06/03/2023- Employees stationed
at Garden Cafe told that
Employee (Mimi/Dimetria)
better have a great day.

* 06/21-23/2023
  - Ass. Gen Not wearing safety
    shoes - wearing slides.

* 06/19/2023 - 6:37 PM
  - Text to Jackson informing of
    availability change due to
    having aquired a FT job.
  - Scheduled to work Gelato
    Bar, 9 AM - 5:30 PM.
  - Stated my availability of
    M-F, 2 days a week, no
    later than 3:30 PM shift
    end.

* Ass. GM - was informed that pt employees could not work Gelato Bar. One employee (Dimitria) is pt and ends shift at 3:30 at Gelato Bar and Garden Cafe.
    - Seniority issue (Sharon)

* Employee (Dimitria) No-Call, No show (06/25/2023, Late Arrival - No Call, 06/26/2023

* 06/27 2023 - 7 Employee Call-outs - 4 Managers Worked Gelato.

* 06/27/2023 - Utility Manager directly supervises relative (Brother).

* 06/27/2023 - New utility employee could not be located for an hour and a half.

* 06/22/2023- Employee eating
at register (Saba) in presence
of Management (Ron/Bobby).

**In response to the statement given by Sodexo Live:**

**FACTS**

I have been an employee of Sodexo Live since 10/01/2022. Within my employee file, there are no negative remarks, no written nor verbal warnings (before 04/12/2023), nor any complaints from any guests, any employee of the company, Sodexo Live, nor the establishment (National Gallery of Art) in which I was contracted to work. There have been no reports made to any level of management regarding any of these allegations of internal theft, I have received no formal nor informal communication from any level of management regarding these allegations of internal theft, nor have I been presented with any video or audio evidence to back up said allegations of internal theft.

These company violations were allegedly committed by me and witnessed by other employees and not reported to any manager. There has been no communication of any kind regarding any of the internal theft allegations or my allegedly informing guests and employees that they did not have to pay for their items. I am being accused of internal company theft but was not reported by the very witnesses who allege to have seen (or were told of) these actions committed by me. I requested evidence of these allegations during my counseling meeting with the HR Manager and the Assistant GM on 04/12/2023. I have not been presented with any evidence by any level of management with the company to back up their claims nor the claims of their witnesses.

**ALLEGED**

I had committed intentional internal theft. I was loud and animated with an employee during the checkout process, gave exasperated sighs of frustration, displayed frustrated hand gestures. Persisted that the employee takes the food items for free. Negated to properly key in food items.

**FACTS**

All documents received from the company, regarding my dismissal state that it was due to "Inappropriate Behavior to Customers/Clients or Poor Customer Service. There is no mention, claim nor evidence of internal theft. There is also an attached disciplinary notice that belongs to another employee who is not me.

## FACTS

### 04/12/2023

I arrived to work for my shift and was informed by the Catering Manager (Mr. Jackson Tinker) that I would be working a floating position that day. I had questioned why I would be working that shift as opposed to another employee (Ms. Sharon Howard) whom I had seniority above. Mr. Tinker responded with, "you'll be sitting down, sheesh." I proceed to my assigned area, as a floating cashier, at the Terrace Café. While there I had made a call to my cousin to further vent about the current working conditions I have had to endure since the company switched over. I was visibly upset but still fully capable of carrying out my job duties. I had begun to calm myself after a few minutes and continued the conversation with my cousin, as we both laughed and joked. I had begun to check out whom I thought was a guest, but later discovered was an employee of the establishment, I joked about giving her the items for free as I keyed them in for payment. Upon tapping her card, the POS system went offline and froze. Per standard procedure, I waited to see if the system would come back online before resetting it. After a few moments the system came back up, I looked at the employee and wished her a good remainder of her day and I went to check out the next guests (who gave me cash after witnessing the previous occurrence with the machine). I look at the monitor to key in the guest items and noticed that the transaction with the employee had failed. When I looked up to try and catch her to pay, she had already left the area. Per company policy I could not leave my station unattended, so I was unable to go after the employee to inform her.

Upon leaving Terrace Café to get my next assigned area, I was told by the Catering Manager that the Assistant GM wanted to see me. I was told to wait in the office. When the Ass. GM arrives he asks what happened in the Café. I explained what happened, to include the system failing on me (which is an extremely often occurrence). The Ass. GM informs me to go home and that there would be an investigation into the event. As I am leaving, I am called back into the office to speak with the HR Manager. She speaks to me about proper work conduct and about being on my phone during my shift (which I openly admitted to). She also informs me of an incident that occurred at the Gelato Bar where employees were heard by guests and museum employees that they "hate" Sodexo, specifically naming the company. Those employees were not disciplined, verbally nor written.

### 04/14/2023

I arrive for a scheduled counseling meeting with the HR Manager and a Union Steward Free (I an unaware of her last name). I was informed that my employment was being terminated due to committing internal theft. I refused to accept or sign any

document(s) and asked the HR Manager for any evidence to back up these allegations, to include any video/audio evidence. I was informed, by the HR Manager that the decision to terminate my employee came directly from Mr. Aaron Beaver, who is not an employee of Volume Services but an employee of the National Gallery of Art. I requested a meeting with a Union Representative and left the office. I was put in touch with Union Representative Sarah Cox who filed my grievance and fought my case on my behalf.

**05/05/2023**

First grievance meeting between myself, Sarah Cox, and HR Manager Morline Lynton. Ms. Cox and I were informed by Ms. Lynton that I had been barred from the premises on which I was contracted to work. Ms. Cox requested all documents that stated I was being barred and any documents to back up their claims of internal theft. All documents **06/15/2023** to be submitted within two weeks.

Second grievance meeting between myself Sarah Cox, Ms. Katie Randall (GM), and Ms. Morline Lynton (HR Manager). I was falsely accused of admitting to committing internal theft by Ms. Lynton, in which I immediately stopped and reminded her that I had given no such admittance and had only admitted to being on a personal call while on the clock. This false claim was not addressed by my Ms. Cox but rather ignored as she focused on the fact that I had not been barred from the premises. Ms. Lynton attempted to enter the very witness statements that have been included in the company's Position Statement to the EEOC regarding my complaint(s), during this meeting. Those witness statements were denied due to not admitting them when asked for in the 05/05/2023 grievance meeting.

Contrary to Volume Services statement, I was not being accommodated, per my doctor's note, while working 8 hour standing shifts at the Gelato Bar. I had been using a counter behind the Gelato Bar (which all employees used to house personal items) to sit and rest on. Around the middle of February 2023, I was told by the Ass. GM that I could not sit on the counter. I asked why I was being told this after months of sitting there, with management's knowledge and visibly within their eyesight as they would pass the Gelato Bar. I was told by the Ass. GM that they were unaware I was sitting on the counter, and I politely reminded him that they would see me as they walked past heading to other locations within the building. I felt as though the conversation was becoming slightly aggressive, so I informed the Ass. GM that I was not going to go back and forth with him and that I would speak to Katie (the GM) about it. After conversing with the GM, I was informed the same thing by her, after informing her that they had watched me sit there since December and no one said anything. In addition, I was informed that I would need to update my doctor's note. I was only given the required 15-minute break period and the required 30-minute lunch period during my work shift.

The statement given that had alleged claims of me being barred from the premises by the HR Manager was made by Ms. Katherine DeMamiel. The statement includes a section that says Ms. Randall retrieved the client's card and charged payment for a soda and chips. I am positive that I keyed her sandwich and chips into the machine before it went offline and failed to process the payment. I was unaware that the client had a soda with her meal.

Upon my reinstation, after finding that I had not been barred from the work site, in June of 2023, I received my schedule. I reached out to Jackson Tinker, the Catering Manager, and informed him of my new availability due to acquiring FT employment elsewhere, which was two days a week Monday – Friday, only available to close Cascade Café (with an ending shift of 3:30PM) and no weekend availability. I was repeatedly scheduled past 3:30PM, to close the Gelato Bar (shift end at 5:30PM). I was also scheduled to work weekend days, outside of my availability given. The company alleges that I was accommodated after turning in my updated doctor's note on 07/18/2023. I was not accommodated medically nor in accordance with my new availability. I was not given the required breaks my doctor specified, thus causing me to call out of work on the days that were mentioned in the company's Position Statement, despite multiple communications between the Catering Manager, the Ass. GM, and the HR Manager, and despite medical accommodation forms I had completed by my physician, per the request of the HR Manager. The company also alleges that my gaining FT employment elsewhere limited by ability to be scheduled at the National Gallery and the scheduling is based on seniority, not location. There are several employees there with additional FT employment, who have had their schedules accommodated at the National Gallery, due to seniority. I have been repeatedly scheduled to work standing shifts at the Gelato Bar, as opposed to an employee I have seniority above (Ms. Sharon Howard). When I questioned this with the Ass. GM he informed me that Ms. Howard was a PT employee and could not be scheduled for shifts at the Gelato Bar. Upon my new availability, and my reinstatement in June of 2023, and as a PT employee I was scheduled for multiple shifts at the Gelato Bar.

According to them in there answer, ~~and~~

**SEE EXHIBIT A**

**In response to Ms. Sharon Howard's statement:**

Ms. Howard stated that she has witnessed me being on my phone and giving away food items for free on several occasions.

**FACTS**

I have witnessed Ms. Howard video chatting on her personal phone with her daughter (also an employee of Sodexo Live) Shae, and her granddaughter while at her POS system. I have witnessed Ms. Howard neglect guests due to her head being down while looking at her phone, and in the presence of the GM Katie Randall, who was present at my POS system at the time this occurred. I believe Ms. Howard was suspended from work, without pay, due to this occurrence by the GM. I have also witnessed Ms. Howard arrive late for her work shift on many occasions, in addition to eating food items while at her POS system. I have witnessed Ms. Howard engage with guests and employees in a negative manner, displaying an attitude. These are all violations of company policy, as I was personally told by the HR Manager, Ms. Morline Lynton, that eating while at POS was not allowed.

There have been no reports, investigations, nor findings, to include video/audio evidence, to prove said allegations of internal theft during my employment with Volume Services, Inc,. d/b/a Centerplate.

**In response to the statement given anonymously:**

**ALLEGED**

This person has stated that they have witnessed me on my phone listening to music, singing, and dancing.

**FACTS**

I would listen to music, using one single earbud. Upon implementation of the new cell phone policy, I reached out to management (the Catering Manager) inquiring if it was okay for me to listen to music through one single earbud if it was not visible to others. I was told by the Catering Manager (Jackson Tinkler) that it was okay. There would be guests that would dance with me, even asking what I was listening to, as I checked out their purchase.

**ALLEGED**

This person stated that I would curse in the presence of the guests. This person also stated that (they were told) that I would wave federal level security employees to my line, negate to check out their purchase(s), and then meet up with them at the end of my shift to collect monetary payment for items I'd given to them for free.

**FACTS**

There have been no reports, investigations, nor findings, to include video/audio evidence, to prove said allegations of internal theft during my employment with Volume Services, Inc,. d/b/a Centerplate.

Paystub ID: FSV21128221
Pay Date: 02/01/23
Pay Period: 01/18/23 to 01/24/23

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 18.7500 | 17.40 | 326.25 | |
| CCardTip | .0000 | 188.95 | 188.95 | |
| **Total Earnings** | **18.7500** | | **515.20** | **4529.34** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 31.94 | 280.82 |
| FICA_MED | | | 7.47 | 65.68 |
| FED W/H | | | 11.50 | 276.97 |
| DC W/H | | | 27.07 | 257.22 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **437.22** | **3592.65** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

Paystub ID: FSV21134140
Pay Date: 02/08/23
Pay Period: 01/25/23 to 01/31/23

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 22.7500 | 17.40 | 395.85 | |
| Reg Pay | 4.7500 | 24.00 | 114.00 | |
| CCardTip | .0000 | 286.17 | 286.17 | |
| **Total Earnings** | **27.5000** | | **796.02** | **5325.36** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 49.35 | 330.17 |
| FICA_MED | | | 11.54 | 77.22 |
| FED W/H | | | 41.46 | 318.43 |
| DC W/H | | | 44.05 | 301.27 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **649.62** | **4242.27** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

Paystub ID: FSV21156875
Pay Date: 02/15/23
Pay Period: 02/01/23 to 02/07/23

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 22.2500 | 17.40 | 387.15 | |
| CCardTip | .0000 | 275.38 | 275.38 | |
| **Total Earnings** | **22.2500** | | **662.53** | **5987.89** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 41.08 | 371.25 |
| FICA_MED | | | 9.60 | 86.82 |
| FED W/H | | | 26.23 | 344.66 |
| DC W/H | | | 35.91 | 337.18 |
| HEREDUES | | | 56.00 | 112.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **493.71** | **4735.98** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 23.7500 | 17.40 | 413.25 | |
| CCardTip | .0000 | 399.60 | 399.60 | |
| **Total Earnings** | **23.7500** | | **812.85** | **6800.74** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 50.40 | 421.65 |
| FICA_MED | | | 11.79 | 98.61 |
| FED W/H | | | 43.48 | 388.14 |
| DC W/H | | | 45.14 | 382.32 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **662.04** | **5398.02** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 18.7500 | 17.40 | 326.25 | |
| CCardTip | .0000 | 256.20 | 256.20 | |
| **Total Earnings** | **18.7500** | | **582.45** | **7383.19** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 36.11 | 457.76 |
| FICA_MED | | | 8.45 | 107.06 |
| FED W/H | | | 18.23 | 406.37 |
| DC W/H | | | 31.10 | 413.42 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **488.56** | **5886.58** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 18.2500 | 17.40 | 317.55 | |
| CCardTip | .0000 | 335.71 | 335.71 | |
| **Total Earnings** | **18.2500** | | **653.26** | **8036.45** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 40.50 | 498.26 |
| FICA_MED | | | 9.47 | 116.53 |
| FED W/H | | | 25.31 | 431.68 |
| DC W/H | | | 35.35 | 448.77 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **542.63** | **6429.21** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 22.7500 | 17.40 | 395.85 | |
| CCardTip | .0000 | 349.49 | 349.49 | |
| **Total Earnings** | **22.7500** | | **745.34** | **8781.79** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 46.21 | 544.47 |
| FICA_MED | | | 10.81 | 127.34 |
| FED W/H | | | 35.38 | 467.06 |
| DC W/H | | | 40.87 | 489.64 |
| HEREDUES | | | 56.00 | 168.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **556.07** | **6985.28** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 28.5000 | 17.40 | 495.90 | |
| Overtime | 1.7500 | 17.40 | 45.68 | |
| CCardTip | .0000 | 447.60 | 447.60 | |
| **Total Earnings** | **30.2500** | | **989.18** | **9770.97** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 61.33 | 605.80 |
| FICA_MED | | | 14.34 | 141.68 |
| FED W/H | | | 64.64 | 531.70 |
| DC W/H | | | 56.60 | 546.24 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **792.27** | **7777.55** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 20.2500 | 17.40 | 352.35 | |
| CCardTip | .0000 | 308.90 | 308.90 | |
| **Total Earnings** | **20.2500** | | **661.25** | **10432.22** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 41.00 | 646.80 |
| FICA_MED | | | 9.59 | 151.27 |
| FED W/H | | | 26.11 | 557.81 |
| DC W/H | | | 35.83 | 582.07 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **548.72** | **8326.27** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 19.7500 | 17.40 | 343.65 | |
| CCardTip | .0000 | 413.34 | 413.34 | |
| **Total Earnings** | **19.7500** | | **756.99** | **11189.21** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 46.93 | 693.73 |
| FICA_MED | | | 10.97 | 162.24 |
| FED W/H | | | 36.78 | 594.59 |
| DC W/H | | | 41.57 | 623.64 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **620.74** | **8947.01** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

Paystub ID: FSV21237820
Pay Date: 04/12/2023
Pay Period: 03/29/23 to 04/04/23

**Personal Information**

JEAN JOHNSON - Emp#:343389 - XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 19.50 | 17.4000 | 339.30 | |
| CCardTip | .00 | 300.2300 | 300.23 | |
| **Total Earnings** | **19.500** | | **639.53** | **11828.74** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 39.65 | 733.38 |
| FICA_MED | | | 9.28 | 171.52 |
| FED W/H | | | 23.93 | 618.52 |
| DC W/H | | | 34.53 | 658.17 |
| HEREDUES | | | 56.00 | 224.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **476.14** | **9423.15** |

Paystub ID: FSV21257522
Pay Date: 04/19/2023
Pay Period: 04/05/23 to 04/11/23

**Personal Information**

JEAN JOHNSON - Emp#:343389 - XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 19.75 | 17.4000 | 343.65 | |
| CCardTip | .00 | 418.4100 | 418.41 | |
| **Total Earnings** | **19.750** | | **762.06** | **12590.80** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 47.25 | 780.63 |
| FICA_MED | | | 11.05 | 182.57 |
| FED W/H | | | 37.39 | 655.91 |
| DC W/H | | | 41.88 | 700.05 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **624.49** | **10047.64** |

Paystub ID: FSV21267567
Pay Date: 04/26/2023
Pay Period: 04/12/23 to 04/18/23

**Personal Information**

JEAN JOHNSON - Emp#:343389 - XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 1.50 | 17.4000 | 26.10 | |
| CCardTip | .00 | 7.9200 | 7.92 | |
| **Total Earnings** | **1.500** | | **34.02** | **12624.82** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 2.11 | 782.74 |
| FICA_MED | | | .49 | 183.06 |
| FED W/H | | | .00 | 655.91 |
| DC W/H | | | 1.36 | 701.41 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **30.06** | **10077.70** |

Paystub ID: FSV21394570
Pay Date: 07/05/2023
Pay Period: 06/21/23 to 06/27/23

**Personal Information**

JEAN JOHNSON - Emp#:343389 - XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 8.00 | 17.4000 | 139.20 | |
| CCardTip | .00 | 202.2300 | 202.23 | |
| **Total Earnings** | **8.000** | | **341.43** | **12966.25** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 21.17 | 803.91 |
| FICA_MED | | | 4.95 | 188.01 |
| FED W/H | | | .00 | 655.91 |
| DC W/H | | | 16.64 | 718.05 |
| HEREDUES | | | 56.00 | 280.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **242.67** | **10320.37** |

Paystub ID: FSV21408124
Pay Date: 07/12/2023
Pay Period: 06/28/23 to 07/04/23

**Personal Information**

JEAN JOHNSON - Emp#:343389 - XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 7.75 | 17.4000 | 134.85 | |
| Holiday | 4.00 | 17.4000 | 69.60 | |
| CCardTip | .00 | 132.5000 | 132.50 | |
| **Total Earnings** | **11.750** | | **336.95** | **13303.20** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 20.89 | 824.80 |
| FICA_MED | | | 4.89 | 192.90 |
| FED W/H | | | .00 | 655.91 |
| DC W/H | | | 16.37 | 734.42 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **294.80** | **10615.17** |

Paystub ID: FSV21441688
Pay Date: 07/19/2023
Pay Period: 07/05/23 to 07/11/23

**Personal Information**

JEAN JOHNSON - Emp#:343389 - XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 4.00 | 17.4000 | 69.60 | |
| CCardTip | .00 | 71.5200 | 71.52 | |
| **Total Earnings** | **4.000** | | **141.12** | **13444.32** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 8.75 | 833.55 |
| FICA_MED | | | 2.04 | 194.94 |
| FED W/H | | | .00 | 655.91 |
| DC W/H | | | 5.64 | 740.06 |
| HEREDUES | | | 56.00 | 336.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **68.69** | **10683.86** |

Paystub ID: FSV21436547
Pay Date: 07/26/2023
Pay Period: 07/12/23 to 07/18/23

**Personal Information**

JEAN JOHNSON - Emp#:343389 - XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 6.00 | 17.4000 | 104.40 | |
| CCardTip | .00 | 31.4800 | 31.48 | |
| **Total Earnings** | **6.000** | | **135.88** | **13580.20** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 8.42 | 841.97 |
| FICA_MED | | | 1.97 | 196.91 |
| FED W/H | | | .00 | 655.91 |
| DC W/H | | | 5.44 | 745.50 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **120.05** | **10803.91** |

Paystub ID: FSV20956044
Pay Date: 10/19/22
Pay Period: 10/05/22 to 10/11/22

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 31.5000 | 16.80 | 529.20 | |
| Overtime | .7500 | 16.80 | 18.90 | |
| CCardTip | .0000 | 473.11 | 473.11 | |
| **Total Earnings** | **32.2500** | | **1021.21** | **1423.69** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 63.32 | 88.27 |
| FICA_MED | | | 14.80 | 20.64 |
| FED W/H | | | 72.12 | 106.43 |
| DC W/H | | | 58.69 | 78.99 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **812.28** | **1129.36** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

Paystub ID: FSV20961749
Pay Date: 10/26/22
Pay Period: 10/12/22 to 10/18/22

**Personal Information**

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 21.2500 | 16.80 | 357.00 | |
| Overtime | 2.2500 | 16.80 | 56.70 | |
| Shift Di | .0000 | 24.30 | 24.30 | |
| Holiday | 8.0000 | 16.80 | 134.40 | |
| CCardTip | .0000 | 470.30 | 470.30 | |
| **Total Earnings** | **31.5000** | | **1042.70** | **2466.39** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 64.65 | 152.92 |
| FICA_MED | | | 15.12 | 35.76 |
| FED W/H | | | 74.70 | 181.13 |
| DC W/H | | | 60.08 | 139.07 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **828.15** | **1957.51** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 13.7500 | 16.80 | 231.00 | |
| CCardTip | .0000 | 430.16 | 430.16 | |
| **Total Earnings** | **13.7500** | | **661.16** | **3127.55** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 40.99 | 193.91 |
| FICA_MED | | | 9.59 | 45.35 |
| FED W/H | | | 28.92 | 210.05 |
| DC W/H | | | 35.82 | 174.89 |
| HEREDUES | | | 56.00 | 56.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **489.84** | **2447.35** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

Paystub ID: FSV20981377
Pay Date: 11/09/22
Pay Period: 10/26/22 to 11/01/22

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 31.7500 | 16.80 | 533.40 | |
| CCardTip | .0000 | 564.50 | 564.50 | |
| **Total Earnings** | **31.7500** | | **1097.90** | **4225.45** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 68.07 | 261.98 |
| FICA_MED | | | 15.92 | 61.27 |
| FED W/H | | | 81.32 | 291.37 |
| DC W/H | | | 63.67 | 238.56 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **868.92** | **3316.27** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

**Personal Information**

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 39.5000 | 16.80 | 663.60 | |
| CCardTip | .0000 | 672.92 | 672.92 | |
| **Total Earnings** | **39.5000** | | **1336.52** | **5561.97** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 82.86 | 344.84 |
| FICA_MED | | | 19.38 | 80.65 |
| FED W/H | | | 109.96 | 401.33 |
| DC W/H | | | 82.83 | 321.39 |
| HEREDUES | | | 56.00 | 112.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **985.49** | **4301.76** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

Paystub ID: FSV21008690
Pay Date: 11/23/22
Pay Period: 11/09/22 to 11/15/22

**Personal Information**

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 37.5000 | 16.80 | 630.00 | |
| Overtime | 2.2500 | 16.80 | 56.70 | |
| Shift Di | .0000 | 38.70 | 38.70 | |
| Holiday | 8.0000 | 16.80 | 134.40 | |
| CCardTip | .0000 | 517.34 | 517.34 | |
| **Total Earnings** | **47.7500** | | **1377.14** | **6939.11** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 85.38 | 430.22 |
| FICA_MED | | | 19.97 | 100.62 |
| FED W/H | | | 114.83 | 516.16 |
| DC W/H | | | 86.29 | 407.68 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **1070.67** | **5372.43** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

Paystub ID: FSV21036350
Pay Date: 11/30/22
Pay Period: 11/16/22 to 11/22/22

**Personal Information**

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

**Employer Information**

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 18.7500 | 16.80 | 315.00 | |
| CCardTip | .0000 | 325.89 | 325.89 | |
| **Total Earnings** | **18.7500** | | **640.89** | **7580.00** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 39.74 | 469.96 |
| FICA_MED | | | 9.29 | 109.91 |
| FED W/H | | | 26.76 | 542.92 |
| DC W/H | | | 34.61 | 442.29 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **530.49** | **5902.92** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 25.0000 | 16.80 | 420.00 | |
| Holiday | 8.0000 | 16.80 | 134.40 | |
| CCardTip | .0000 | 718.88 | 718.88 | |
| **Total Earnings** | **33.0000** | | **1273.28** | **8853.28** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 78.94 | 548.90 |
| FICA_MED | | | 18.46 | 128.37 |
| FED W/H | | | 102.37 | 645.29 |
| DC W/H | | | 77.46 | 519.75 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **996.05** | **6898.97** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

Paystub ID: FSV21050241
Pay Date: 12/14/22
Pay Period: 11/30/22 to 12/06/22

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 33.0000 | 16.80 | 554.40 | |
| CCardTip | .0000 | 398.38 | 398.38 | |
| **Total Earnings** | **33.0000** | | **952.78** | **9806.06** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 59.08 | 607.98 |
| FICA_MED | | | 13.82 | 142.19 |
| FED W/H | | | 63.91 | 709.20 |
| DC W/H | | | 54.24 | 573.99 |
| HEREDUES | | | 56.00 | 168.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **705.73** | **7604.70** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

Paystub ID: FSV21063558
Pay Date: 12/21/22
Pay Period: 12/07/22 to 12/13/22

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 28.2500 | 16.80 | 474.60 | |
| CCardTip | .0000 | 397.12 | 397.12 | |
| **Total Earnings** | **28.2500** | | **871.72** | **10677.78** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 54.04 | 662.02 |
| FICA_MED | | | 12.64 | 154.83 |
| FED W/H | | | 54.18 | 763.38 |
| DC W/H | | | 48.97 | 622.96 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **701.89** | **8306.59** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 30.7500 | 16.80 | 516.60 | |
| Overtime | .2500 | 16.80 | 6.30 | |
| CCardTip | .0000 | 284.57 | 284.57 | |
| **Total Earnings** | **31.0000** | | **807.47** | **11485.25** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 50.07 | 712.09 |
| FICA_MED | | | 11.71 | 166.54 |
| FED W/H | | | 46.47 | 809.85 |
| DC W/H | | | 44.79 | 667.75 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **654.43** | **8961.02** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 18.7500 | 16.80 | 315.00 | |
| Holiday | 5.0000 | 16.80 | 84.00 | |
| CCardTip | .0000 | 672.44 | 672.44 | |
| **Total Earnings** | **23.7500** | | **1071.44** | **1071.44** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 66.43 | 66.43 |
| FICA_MED | | | 15.54 | 15.54 |
| FED W/H | | | 74.52 | 74.52 |
| DC W/H | | | 61.95 | 61.95 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **853.00** | **853.00** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 11.7500 | 16.80 | 197.40 | |
| Reg Pay | 9.2500 | 17.40 | 160.95 | |
| Holiday | 5.0000 | 16.80 | 84.00 | |
| CCardTip | .0000 | 704.00 | 704.00 | |
| **Total Earnings** | **26.0000** | | **1146.35** | **2217.79** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 71.07 | 137.50 |
| FICA_MED | | | 16.62 | 32.16 |
| FED W/H | | | 83.50 | 158.02 |
| DC W/H | | | 66.82 | 128.77 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **908.34** | **1761.34** |

If there is a discrepancy with the pay stub information provided, please contact your
employer.

## Personal Information

## Employer Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 30.2500 | 17.40 | 526.35 | |
| Overtime | .2500 | 17.40 | 6.53 | |
| CCardTip | .0000 | 456.94 | 456.94 | |
| **Total Earnings** | **30.5000** | | **989.82** | **3207.61** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 61.37 | 198.87 |
| FICA_MED | | | 14.35 | 46.51 |
| FED W/H | | | 64.72 | 222.74 |
| DC W/H | | | 56.65 | 185.42 |
| HEREDUES | | | 56.00 | 56.00 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **736.73** | **2498.07** |

If there is a discrepancy with the pay stub information provided, please contact your employer.

## Personal Information

JEAN JOHNSON - Emp#:343389 -
XXX-XX-4613
680 RHODE ISLAND AVE NE
APT 462
WASHINGTON, DC 20002

## Employer Information

Centerplate INC.
1 Independence Pointe
Suite 305
Greenville, SC 29615

| Earnings | Hours | Rate | Amount | Amount YTD |
|---|---|---|---|---|
| Reg Pay | 23.5000 | 17.40 | 408.90 | |
| Holiday | 5.0000 | 17.40 | 87.00 | |
| CCardTip | .0000 | 310.63 | 310.63 | |
| **Total Earnings** | **28.5000** | | **806.53** | **4014.14** |
| **Deductions** | | | **Amount** | **Amount YTD** |
| FICA_SS | | | 50.01 | 248.88 |
| FICA_MED | | | 11.70 | 58.21 |
| FED W/H | | | 42.73 | 265.47 |
| DC W/H | | | 44.73 | 230.15 |
| **Total Deductions** | | | | |
| **Net Pay** | | | **Amount** | **Amount YTD** |
| | | | **657.36** | **3155.43** |

If there is a discrepancy with the pay stub information provided, please contact
your employer.



**RESPONDENT'S POLICIES**

**Equal Employment Opportunity and Non-Discrimination Policy**

Respondent's Equal Employment Opportunity Policy ensures equal employment opportunity in the conduct of all its business activities. These activities include, but are not limited to recruitment, hiring, promotion, training, pay practices, and benefits. Discrimination based on an individual's race, color, sex, gender, sexual orientation, religion, national origin, age, disability, or other protected status, as defined by law, will not be tolerated. Further, Respondent prohibits retaliation against an individual because he or she opposes any unlawful practice, files or participates in an investigation of an internal claim or a formal charge of discrimination, requests a reasonable accommodation, or participates in any action under any antidiscrimination law (Exhibit A).

**FACTS**

Respondent contracts with the National Gallery of Art to provide food service to visitors and client staff at the Gallery. Respondent hired Ms. Johnson as a part-time Cashier on October 1, 2022. Ms. Johnson had a full-time job elsewhere and that limited her ability to be scheduled at the National Gallery. Respondent's employees were covered by a Collective Bargaining Agreement and employees were scheduled based on seniority not location at the Gallery.

*[handwritten margin note: EE not CBA Job Desc Above Shared Holidays]*

On April 12, 2023, Ms. Johnson failed to ring up the total food items of an employee of the National Gallery, who is an Assistant General Counsel. The employee objected to not paying for her food and asked to be properly charged. She was told by Ms. Johnson that she could just take the uncharged items. The employee reported her concerns about the incident to the National Gallery Food Service Manager, who in turn reported the issue to Respondent. Ms. Johnson was suspended and initially her employment was terminated. On June 21, 2023, Ms. Johnson was returned to work as part of the grievance process with the Union and she received a written warning for poor customer service in handling a customer credit card transaction and inappropriately using her cell phone at her workstation (Exhibit B).

Contrary to her allegations, Ms. Johnson was accommodated as requested by her physician at all times. She supplied a physician's note dated December 7, 2022 that advised she would need to take a break after 4 hours of standing and sit down (Exhibit C). The note further stated that she would need to schedule a doctor's visit in 4-6 weeks for a follow-up. No additional information was provided but, Ms. Johnson was granted breaks after 4 hours. That accommodation did not cease in February 2023 as alleged, it continued to be granted. On July 18, 2023, Ms. Johnson provided a physician's note that stated she needed frequent breaks, if standing for extended periods of time (Exhibit D). Just like the prior request for accommodation, this revised request was granted by her managers during her tenure. In July 2023, Ms. Johnson who was scheduled to work only 2 shifts per week, at her request. She began to call out for one of the two shifts repeatedly. She was scheduled for 7/6 & 7/11 and

*sodexo*

sodexo
QUALITY OF LIFE SERVICES

*(handwritten annotation to the right of the logo, difficult to read)*

called out on 7/11.  She was scheduled for 7/12 and 7/18 and called out 7/12.  Then, she was scheduled for 7/20 & 7/24 and called out on 7/24.  Thereafter, inexplicably, Ms. Johnson voluntarily resigned her part-time position with Respondent on July 31, 2023.

**CONCLUSION**

Respondent denies that it discriminated against Ms. Johnson based on her alleged disability.  Her requests for accommodation were granted during her work tenure.  Ms. Johnson voluntarily resigned her part-time position.  For the foregoing reasons, Respondent requests that this charge be dismissed with a finding that no cause exists to believe that discrimination occurred.

Respectfully,

*Kimberly J. Hansen*


QUALITY OF LIFE SERVICES

# EXHIBIT A


# EMPLOYMENT RELATIONSHIP

## AT-WILL EMPLOYMENT

Policies and benefits are presented in this Handbook for information only. The language is not intended to create, or to be construed to constitute, a contract of employment, either express or implied, between Centerplate and any of its employees or any other person.

Employment with the Company is entered into voluntarily, and each employee or the Company are free to terminate the relationship at any time, for any reason, or no reason, unless otherwise prohibited. It is understood each employee is employed as an at-will employee.

Employees who violate any provision of this Handbook or any policy, standard of conduct or rule of behavior of Centerplate can be terminated immediately in the discretion of Centerplate.

## CHANGES IN POLICY

Because our business is constantly changing, we reserve the right to modify or eliminate any policy or benefit in whole or in part, with or without notice.

From time-to-time, management may interpret, apply or modify the policies in the exercise of its discretion and in accordance with applicable federal, state or local law. Differences in interpretation that arise between Handbook language and the language used in legal documents that describe certain benefit plans (such as Summary Plan Descriptions and/or the Plans) will be resolved by the Plan language.

# EMPLOYMENT POLICIES AND PRACTICES

## EQUAL EMPLOYMENT OPPORTUNITY

It is Centerplate's policy to ensure equal employment opportunity in the conduct of all of its business activities. These activities include recruitment, hiring, promotion and development, training, pay practices, benefits, transfers, and all other conditions of employment and business relationships. Discrimination based on an individual's race, color, sex, gender, sexual orientation, religion, national origin, age, disability, veteran, genetic information * or other protected status, as defined by law, will not be tolerated. All Centerplate employees shall use merit, qualifications and other

*See Page 25


job-related criteria as the sole bases for all employment-related decisions.

## HARASSMENT

Centerplate is committed to providing every employee with a positive work environment. Harassment on the basis of race, color, sex, gender, sexual orientation, religion, national origin, age, disability, veteran, genetic information* or other protected status will not be tolerated. This applies to harassment of an employee, contractor, vendor or customer by another employee, contractor, vendor or customer.

Harassment is conduct that denigrates or shows hostility or aversion toward an individual or group resulting in an intimidating, hostile, or offensive working environment. Harassing conduct unreasonably interferes with an employee's work performance or otherwise adversely affects an individual's employment opportunities. Harassing conduct includes, but is not limited to, epithets, slurs, negative stereotyping, offensive jokes, threatening, intimidating or hostile acts and written or graphic material that denigrates or shows hostility or aversion toward an individual or group. Centerplate's policy also prohibits bullying of employees by other employees.

Sexual harassment has been defined as unwelcome sexual advances, requests for sexual favors or other visual, verbal or physical conduct of a sexual nature when:

- submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;
- submission to or rejection of such conduct is used as the basis for employment decisions affecting an individual; or
- such conduct has the purpose or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile or offensive working environment.

Examples of violations include the following:

- persistent on-the-job flirtations or other invitations for a social relationship with a fellow employee when he or she has stated or indicated that such advances or interests are unwelcome;
- displaying any sexually suggestive material in the

*See Page 25

2



workplace, or sending e-mails incorporating such materials; or
- tolerating or instituting hiring, compensation, promotion and layoff practices which are not clearly job related nor based upon legitimate non-discriminatory factors.

## RETALIATION

Centerplate, and federal law, prohibit retaliation against an employee who has filed, in good faith, a complaint of discrimination, harassment or retaliation, or who assists in a complaint investigation.

## COMPLAINT PROCEDURES

An employee violating Centerplate's policies on discrimination, harassment or retaliation may be subject to disciplinary action, up to and including termination. An employee with a problem or concern relating to harassment, discrimination or retaliation should immediately report his or her problem or concern, without fear of reprisal, to his or her supervisor, to the Corporate Human Resources Department or to the Network Hotline at (800) 241-5689.

## WORKPLACE VIOLENCE

Centerplate is dedicated to providing a safe workplace for all employees and does not tolerate any form of workplace violence. Employees are prohibited from making threats, engaging in violent activities or bullying employees while on Company or client property. Some examples of violent acts are as follows: causing physical injury to another person; making threatening remarks; intentionally damaging property; and carrying a weapon while on client or Company property or while on Company business.

## ELECTRONIC COMMUNICATIONS POLICY

Centerplate's worldwide electronic communications networks are intended for business use only. This policy applies to all employees and contractors using the Company's, or a client's, electronic communications systems, irrespective of the time of day or location of the employee or contractor.

Prohibited activities in which voicemail, e-mail, and Internet users may not engage include the following:
- Sending or forwarding chain letters, solicitations, or excessive personal messages;
- Creating, accessing, downloading or transmitting messages or images that are considered inappropriate



# EXHIBIT B


**sodexo**
QUALITY OF LIFE SERVICES

## Counseling Notice:

**EMPLOYEE DATA:**

Employee: _Johnson_ _Jean_ _____
Last    First    Middle

Department: _Conessions_    Position: _Gelato_    **EMPLOYEE**

**SPECIFICS OF THE COUNSELING:**

| Date of Warning: | Date of Violation: | Time of Violation: | **REASON FOR COUNSE** |
|---|---|---|---|
| 6/15/23 | 4/12/23 | | ☐ Absenteeism |
| | | | ☐ Tardiness |
| Location of Violation: _Terrace Outlet_ | | | ☐ Carelessness |
| | | | ☐ Clocking out Early/Clock V |
| | | | ☐ Unapproved overtime |
| Has the employee been previously counseled? ☐ Yes ☒ No | | | ☐ Disobedience/Insubordinat |
| | | | ☐ Failure to Follow Instruction |
| Type of Warning: ☐ Verbal ☒ Written | | | ☐ Intoxication/Violations of D |
| | | | ☐ Inappropriate Behavior to C |
| Dates of Prior Counseling: | | | ☐ or Poor Customer Service |
| (month, day, year) _/_/_ _/_/_ | | | ☐ Falsification of Records/Do |
| | | | ☐ Unsatisfactory Work Quality |

**ACTION TO BE TAKEN NOW:**

☐ Oral Warning    ☐ Probation
☐ Written Warning    ☐ Suspension (Pending Investigation)
☐ Dismissal    ☒ Other: _Second Warning_

☒ Violation of Company Polic
☐ Violation of Safety Rules or
☐ Willful Damage to Property
☐ Working on Personal Matte
☐ Obscene, Abusive or Threa
☐ Leaving Work Area
☐ Violence or Threat of Violen
☐ Unauthorized Removal or A
☐ to Remove Company or Cl
☐ Other: ☐ all

Employer Statement (Insert facts supporting counseling):
_Jean is receiving this second warning for her behaviour on April 12, Jean was talking on_
_her cellphone at her workstation and was speaking ill about the company. Jean's_
_handling of the credit card payment and customer service were poor and unacceptable._
_Any further behaviour of this nature will lead to suspension up to and including_
_termination from Sodexo Live!._

NOTE: THE ACTION TAKEN PURSUANT TO THIS COUNSELING NOTICE DOES NOT ALTER THE EMPLOYI
ALTER THE COMPANY'S RIGHT TO TERMINATE THE EMPLOYEE AT ANY TIME IN ITS DISCRETION.

Employer Name (Print): _Morline Lynch_    Employer Signature: _[signature]_    Date: 6/21/23

Witness Name (Print): _Ikhula_    Witness Signature: _[signature]_    Date: 6/21/23
If One Present

**EMPLOYEE STATEMENT:**

_____ I AGREE with Employer's Statement.    _____ I DISAGREE with Employer's stater
(initial)    (initial)

Employee Statement:

_[signature]_

I have read

Employee Name (Print): _Jean Johnson_ Employee Signature: _[signature]_ Date: 06/21/23
Translator Name (Print): _____ Translator Signature: _____ Date: _____
If Applicable



QUALITY OF LIFE SERVICES

DocuSign Envelope ID: CEFB643B-AD95-46EA-A804-08B8DDCA67BD

## Statement

My name is Katherine DeMamiel, and I am an Assistant General Counsel at the National Gallery of Art (the "National Gallery"). My office is located on the 6th floor of the National Gallery's East Building, and I work from my office on Tuesdays and Wednesdays most weeks.

On Wednesday, April 12, 2023, I went to the Terrace Café (the "Café") on the East Building's 4th floor to pick up food for lunch. I do not recall the exact time, but I usually do this around noon. On this day, I picked up a salad, bag of chips, and a soda. While I was selecting my food, I noticed that the woman working behind the check-out counter was speaking in an animated and loud voice, saying "they have really pissed me off now." My impression was that she was speaking about her employer, and she was speaking loudly enough and with enough animation that it caught my attention. There were other guests (who I assumed were National Gallery visitors) present in the Café as well.

After I selected my food, I went up to the counter to pay. When the woman rang up my food, I noticed that the total was only the cost of the salad, and I told her that I thought she had not included my chips and soda in the total. The woman made an exasperated noise and initially pressed some buttons on the register and card machine (presumably to try to back out the order and enter the correct order), but when the machine did not initially respond, she told me to just pay for the salad and take the chips and soda. I told her no, that I would be happy to wait and pay for all my food, but she again said I should just pay for the salad and go, this time more insistently. She was also getting more animated (i.e., she was getting louder and making more gestures), expressing that she was frustrated and angry with someone (I assumed her employer or a specific person at her job) and with the checkout machines. I got the distinct impression that she would continue or increase this behavior if I kept insisting that I would wait to pay for my food.

At this point, not wanting to cause a scene in front of the guests at the Café, I paid the amount on the register (which was just for the salad), took my salad, chips, and soda, and returned to my office. I then contacted Isabelle Raval, an Associate General Counsel at the National Gallery who I knew worked closely with our food services team. Isabelle put me in touch with Aaron Beaver, our Food Services Manager, who then put me in touch with Katie Randall, our Sodexo manager. Ms. Randall came to my office, collected my credit card, charged it for the chips and soda, then brought my card and a receipt back to me.

*(Did not notice drink)*

*(MACHINE FAILED ON CHIPS/ SANDWICH)*

I did not know the name of the woman working behind the counter during the incident described above, but I recall that she was a tall, slender African American woman wearing some kind of wrap around her hair and dark clothing. I gave this description to both Aaron Beaver and Katie Randall when I spoke with them the same day after the events described above.

Katherine Diane Demamiel
Katherine DeMamiel
Date: _____  6/8/2023



**QUALITY OF LIFE SERVICES**

Statement of Aaron Beaver - Food Services Manager

Office of the Treasurer - National Gallery of Art

I, Aaron Beaver, am the Food Services Manager at the National Gallery of Art (the "National Gallery"). On April 12, 2023, I received a phone call from Isabelle Raval, Associate General Counsel, Office of the Secretary & General Counsel, National Gallery. Ms. Raval is the attorney whom I work with on food services contracts at the National Gallery. During my phone call with Ms. Raval, she told me that one of the other attorneys in her office, Katie DeMamiel, contacted her in response to an incident that had just occurred in the Terrace Café.

Specifically, Ms. Raval told me that Ms. DeMamiel said that she had gone to the Terrace Café to purchase lunch. Ms. DeMamiel was attempting to purchase a salad and a drink from the on-duty cashier (now identified by Sodexo as Jean Johnson). Ms. DeMamiel told Ms. Raval that the cashier was on the phone making disparaging statements about Sodexo while she rang up visitors and employees. Ms. DeMamiel said there appeared to be some difficulty with the cashier ringing up her food and drink, and she was only charged for the drink; she told Ms. Raval that the cashier told her she could have the food (implying she did not have to pay for it). Ms. DeMamiel told Ms. Raval that it was probably not a good idea to have a person talking badly about Sodexo in front of visitors and employees.

According to Ms. Raval, Ms. DeMamiel took the food and drink back to her office and notified Ms. Raval of the incident. Ms. Raval determined the best course of action was for Ms. Raval to reach out to me since I am the Contract Officer's Representative (COR) for the Sodexo Live! food service contract so that I could inform Sodexo about the incident.

Ms. Raval told me that Ms. DeMamiel would like to pay for her food because she felt uncomfortable receiving a free meal as a National Gallery employee. I told Ms. Raval that I would be in touch with Ms. DeMamiel and the General Manager from Sodexo Live!, Katie Randall, to inform Ms. Randall of the incident and to arrange for Ms. DeMamiel to pay for her food.

Subsequent to my conversation with Ms. Raval, I contacted Ms. DeMamiel and spoke with her. I then contacted Katie Randall via phone to describe the incident with Ms. Katie DeMamiel and the on-duty cashier at the Terrace Cafe.

After detailing the incident to Ms. Randall, I provided her with the contact information for Ms. DeMamiel, and requested that she coordinate payment for the food received.

I also made a recommendation to Ms. Randall to assess the temperament and behavior of the cashier and make a determination if, for that day, the cashier should be removed from her position interacting with visitors and National Gallery staff.

I followed up with Ms. Randall later in the day to ensure that she was able to coordinate payment with Ms. DeMamiel, and she stated she was able to. Ms. Randall also stated that she had made the decision to remove the cashier from her shift that day and suspended her pending investigation.

Aaron Beaver

Date: 6/8/23


**sodexo**
QUALITY OF LIFE SERVICES

I Sharon Howard has witnesed
On several occation ~~the customer~~
~~would go to the register behind~~
~~me~~ which was raned by Sean my
coworker. I have seen her tell customers
this is free you don't have to pay
for this.

Sharon Howard
June 13, 2023



I who would like to stay anonymously but I would like to inform Sodexo Live that I have witness Jean curse in front of customers which is embarrassing, Jean has been on her phone multiply times listening to music, singing, dancing, and talking on the phone. I was informed she would waive the security guards over to her line and she would not be ringing up items and they would meet up after work to provide Jean with the difference from the free food provide to them.

Same Statements He attempted to enter as evidence during grievance meeting between myself, HR, GM, UNION REP. Company could not prove internal theft upon suspension, Changed to Barrment from work site, ~~termination~~ by client, Which was ~~to~~ falsely stated.
(Include details of UNION Meetings)



# EXHIBIT C


**sodexo**
QUALITY OF LIFE SERVICES

 **UNITY**
HEALTH CARE

3020 14th Street NW, Washington, DC 20009 Phone: (202) 469-4699
www.unityhealthcare.org  Upper Cardozo Health Center

*"We Treat You Well"*

I have consulted with and/or examined the patient named below and certify that he/she:

☒ was seen at this clinic on 12/7/22

☐ is sick and should remain at home until _____ (inclusive).

☐ may return to work/school with the following restrictions until _____

    ☐Light duty only

    ☐No physical education

    ☐Lifting limited to _____ pounds

    ☐No recess

    ☐Other _____

☐ is able to begin or return to work/school without restriction.

☐ tested PPD Negative on _____

☐ tested PPD Positive on _____

    CXR Negative for TB on _____

    Start(s)(ed) treatment on _____

Remarks:

☒ needs to keep follow-up appointment in 4-6 days/weeks.
Patient has chronic sciatica and patellofemoral syndrome of
R leg. Can not be standing for over 4 hours without pain

Provider Signature _____

Patient Name:  Jean Johnson  DOB: 01/03/1977

Site:  Upper Cardozo Health Center, 3020 14th Street NW Washington, DC  20009

Unity Health Care, Inc
Upper Cardozo Health Center
3020 14th Street, NW
Washington, DC 20009


QUALITY OF LIFE SERVICES

# EXHIBIT D



## Request for Accommodation Form

It is Sodexo Livel's policy to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless the accommodation would impose undue hardship on the Company.

Date of Request: 06/22/2023  Unit Number: _____

Unit Name: National Gallery of At  State: DC

Division: _____

Employee Name: Jean Johnson  Employee ID #: 348389

Circle One in Each Category: Applicant/Current Employee  Manager/Hourly

Is the Request Verbal or Written (circle one)

Job Title: Cashier / Attendant

Reason for Request (attach any supporting documentation regarding limitations)
Chronic Sciatica w/ prolonged/constant standing / movement. Severe back and right knee pain.

Accommodation Requested (attach any supporting medical documentation)
Frequent rest periods while standing during shifts.

Employee/Applicant's Signature
Jean Johnson

Manager's Signature
_____

Print Manager Name and Title below
_____

*To Manager:*

*Give a copy of this request to employee/applicant and retain original in a confidential file, separate from the personnel file.*



**sodexo**
QUALITY OF LIFE SERVICES

**sodexo**

## Accommodation Request Medical Inquiry Form

**To the Employee:** As we discussed, in order to continue the interactive process of exploring the options for accommodations, it is necessary to obtain information from your health care provider regarding your impairment and limitations. Please complete the top portion of this form and sign it. Give the form to your health care provider (along with a copy of your job description and work schedule or list of essential job functions and work schedule provided to you by your manager or Human Resources) to complete the remainder of this form. You or your health care provider should return the completed form within 15 days to: _____

Your Name: _Jean Johnson_    Today's Date: _7 | 17 | 2023_
Your Signature: _Jean Johnson_    Your Current Position: _Cashier / Attendant_

**To the Health Care Provider:** For reasonable accommodation under the ADA, an employee has a disability if he or she has an impairment that substantially limits one or more major life activities or a record of such an impairment. This Accommodation Request Medical Inquiry Form is required to assist Sodexo in identifying a reasonable accommodation to the impairment of the above-named employee in order for him/her to perform the essential functions of the job. After a review of the job description or list of essential functions and work schedule for this employee's position, please complete this form and sign below.

Your Name: _Jacob Darnell D.O._
Type of Practice: _Family Practice_
Address: _____
Telephone Number: _302-469-4659_



Does the employee have a physical or mental impairment?[1] _✓_ Yes ____ No

If yes, what is the impairment? _Pain w/ standing extended periods of time_

[1] Note, "The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services."
March 2016

_Activities :_ _Cashier/Handling_
_Standing, Squatting, Lifting_




Is the impairment long-term or permanent?  ___X___ Yes ____ No

If *not* permanent, how long will the impairment likely last?  Expected Duration (weeks, months)

_Unsure at this time. Patient to complete physical therapy and then_

_be reassessed_

Please answer the following questions based on what limitations the employee has when his or her condition is in an active state and what limitations the employee would have if no mitigating measures were used.  Mitigating measures include things such as medication, medical supplies, equipment, hearing aids, mobility devices, the use of assistive technology, reasonable accommodations or auxiliary aids or services, prosthetics, and learned behavioral or adaptive neurological modifications.  Mitigating measures do not include ordinary eyeglasses or contact lenses.

Does the impairment substantially limit a major life activity?  ___X___ Yes ____ No
Note: Does not need to significantly or severely restrict to meet this standard

If yes, what major life activity(ies) is/are effected?  *(Please check all that apply.)*

| Caring for Self | Walking | Hearing | Lifting | Other (describe) |
|---|---|---|---|---|
| Interacting with Others | Standing | Seeing | Sleeping | |
| Performing Manual Tasks | Reaching | Speaking | Concentrating | |
| Breathing | Thinking | Learning | Reproduction | |
| Working | Toileting | Sitting | | |

Does the impairment substantially limit the operation of a major bodily function?  ___X___ Yes ____ No
Note: Does not need to significantly or severely restrict to meet this standard

If yes, what bodily function is affected?  *(Please check all that apply.)*

| Immune | Hemic | Circulatory | Endocrine |
|---|---|---|---|
| Normal Cell Growth | Digestive | Lymphatic | Reproductive |
| Special Sense Organs & Skin | Bowel | Bladder | Genitourinary |
| Neurological | Brain | Special Sense | Respiratory |
| Musculoskeletal | Cardiovascular | Other (describe) | |

An employee with a disability is entitled to an accommodation only when the accommodation is needed because of the disability.  The following questions may help Sodexo determine whether the requested accommodation is needed because of the disability.

What limitation(s) is interfering with job performance?  *(Please explain.)*

_Unable to stand for extended periods of time_

sodexo

What job function(s) is the employee having trouble performing because of the limitation(s). *(Please explain.)*

Patient is unable to stand for extended periods of time

How does the employee's limitation(s) interfere with his/her ability to perform the job function(s)? *(Please explain.)*

Unable to stand for extended periods of time.

> If an employee has a disability and needs an accommodation because of the disability, the employer must provide a reasonable accommodation, unless the accommodation poses an undue hardship. The following questions may help Sodexo determine effective accommodations.

Do you have any suggestions regarding possible accommodations to improve job performance? If so, what are they? *(Please explain.)*

Allow patient more frequent breaks and/or the ability to sit during part of the day

How would your suggestions improve the employee's job performance? *(Please explain.)*

March 2015

_(signature)_ D.C.
7/17/2003



sodexo

Any additional comments or suggestions?

Health Care Provider's Signature: _Jacl. Plunll DC_
Date) __7/17/2023__

March 2016



QUALITY OF LIFE SERVICES

 **UNITY**
**HEALTH CARE**

3020 14th Street NW, Washington, DC 20009 Phone: (202) 469-4699
www.unityhealthcare.org   **Upper Cardozo Health Center**

*"We Treat You Well"*

I have consulted with and/or examined the patient named below and certify that he/she:

☐ was seen at this clinic on ___7/17/2023___

☐ is sick and should remain at home until _____ (inclusive).

☑ may return to work/school with the following restrictions until ___See below___

   ☐ Light duty only

   ☐ No physical education

   ☐ Lifting limited to _____ pounds

   ☐ No recess

   ☐ Other ___Communst /Remark sacta___

☐ is able to begin or return to work/school without restriction.

☐ tested PPD Negative on _____

☐ tested PPD Positive on _____

   CXR Negative for TB on _____

   Start(s)(ed) treatment on _____

Remarks:

☐ needs to keep follow-up appointment in ___4-6___ days/weeks.

___Patient has chronic sciatica and knee pain w/ associated___
___patellofemoral syndrome. Patient cannot stand longer than___
___4 hours w/o pain___

Provider Signature ___Joel Darrell DC,___

*Patient Name: Jean Johnson DOB: 01/03/1977*

*Site:   Upper Cardozo Health Center, 3020 14th Street NW Washington, DC 20009*

**Unity Health Care**
YELLOW TEAM
3020 14th Street, NW
Washington, DC 20009



QUALITY OF LIFE SERVICES

**From:** Lynton, Morline
**Sent:** Friday, July 21, 2023 5:06 PM
**To:** Jean Johnson <jdaniejo@gmail.com>
**Cc:** Ahmed, Ikhlaq <Ikhlaq.Ahmed@sodexo.com>; Tinker, Jackson <Jackson.Tinker@sodexo.com>
**Subject:** RE: Medical accommodation.

Hi Jean,

yes.



**Morline Lynton**
District Human Resources Manager
Sodexo Live!
Mb: (667) 209-1115
Email: morline.lynton@Sodexo.com



**From:** Jean Johnson <jdaniejo@gmail.com>
**Sent:** Thursday, July 20, 2023 6:03 PM
**To:** Lynton, Morline <Morline.Lynton@sodexo.com>
**Subject:** Medical accommodation.

---

**External sender**
Check the sender and the content are safe before clicking links or open attachments.

Good evening Mrs. Morline. I'm sending this email regarding my medical accommodation. I am scheduled for Gelato this coming Tuesday and would like to know if I'll be accommodated, per my doctor's note.

Thank you.



Kimberly J. Hansen
Senior EEO Representative

Telephone: (301) 987-4530
kim.hansen@sodexo.com

September 13, 2023

**VIA EEOC PORTAL**
Linda Lee
Investigator
U.S. Equal Employment Opportunity Commission
Baltimore Field Office
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201

Re: **Jean Johnson v. Volume Services, Inc., #531-2023-03540**

Dear Ms. Lee:

This submission represents the response of Volume Services, Inc., d/b/a Centerplate. ("Respondent") to the above-referenced charge and to the Commission's request for information. Although the charge lists the Respondent as "Centerplate", the proper corporate entity for Respondent is Volume Services, Inc., d/b/a Centerplate. Respondent is incorporated in South Carolina and maintains its headquarters at 1 Independence Pointe, Suite 305, Greenville, SC 29615. Respondent is the premier provider of catering, concessions, management and merchandise services to major stadiums, convention centers and other entertainment venues throughout the United States. Ms. Johnson worked at Respondent's account at the National Gallery of Art, 6th and Constitution Ave NW, Washington, D.C.

**STATEMENT OF POSITION**

Respondent denies that it discriminated against Ms. Johnson based on her alleged disability. Respondent further denies that Ms. Johnson was subject to retaliation as alleged. All employment actions taken concerning Ms. Johnson were based on legitimate, non-discriminatory reasons, unrelated to her alleged disability. Ms. Johnson voluntarily resigned her part-time position with Respondent.

**JURISDICTIONAL MATTERS**

Although the charge is against Volume Services, Inc., Katie Randall has been identified in the charge by name. Sodexo assumes that the charge is not against Ms. Randall personally. If this is incorrect, please advise Sodexo within ten days of receipt of this correspondence so that she may be notified of the charges brought against her by the charging party and respond accordingly.

# Counseling Notice:

## EMPLOYEE DATA:

Employee: _____ **Johnson** _____ **Jean** _____ _____ Middle
Last                First              Middle

**EMPLOYEE**

Department: _____ **Concessions** _____ Position: _____ **Worker** _____ **343**

## SPECIFICS OF THE COUNSELING:

| Date of Warning: | Date of Violation: | Time of Violation: |
|---|---|---|
| | **4/12/23** | **12:10 PM** |

Location of Violation: _____

Has the employee been previously counseled? ☐ Yes ☒ No

Type of Warning: ☐ Verbal ☐ Written

Dates of Prior Counseling: _____ / / _____
(month, day, year)          / /        / /

## ACTION TO BE TAKEN NOW:
☐ Oral Warning   ☐ Probation
☐ Written Warning   ☐ Suspension (Pending Investigation)
☒ Dismissal   ☐ Other: _____

**REASON FOR COUN**
☐ Absenteeism
☐ Tardiness
☐ Carelessness
☐ Clocking out Early/Clock
☐ Unapproved overtime
☐ Disobedience/Insubordin
☐ Failure to Follow Instructi
☐ Intoxication/Violations of
☒ Inappropriate Behavior to
or Poor Customer Servic
☐ Falsification of Records/[
☐ Unsatisfactory Work Qua
☐ Violation of Company Po
☐ Violation of Safety Rules
☐ Willful Damage to Proper
☐ Working on Personal Ma
☐ Obscene, Abusive or Thr
☐ Leaving Work Area
☐ Violence or Threat of viol
☐ Unauthorized Removal o
to Remove Company or (
☐ Other: _____

Employer Statement (Insert facts supporting counseling):
*Jean is been terminated from Sodexo Live for her dismissive attitude to client,*
*and also speaking to someone on the phone in a very negative way, while using*
*a hand gesture for the client to leave without finishing to pay for the food she*
*ordered.*

NOTE: THE ACTION TAKEN PURSUANT TO THIS COUNSELING NOTICE DOES NOT ALTER THE
EMPLOYEE'S AT WILL STATUS OR ALTER THE COMPANY'S RIGHT TO TERMINATE THE EMPLC

Employer Name (Print _____ Employer Signature: _____ Date:

Witness Name (Print): _____ Witness Signature: _____ Date:
If One Present

## EMPLOYEE STATEMENT:
_____ I **AGREE** with Employer's Statement. _____ I **DISAGREE** with Employer's state
(Initial)                                        (Initial)

Employee Statement: _____

and understand it. I also realize that further misconduct may result in additional discipline up to and inclu

Employee Name (Print_____ Employee Signature: _____ Date:

Translator Name (Prin_____ Translator Signature: _____ Date:
If Applicable

**EMPLOYEE DATA:**

Employee: _____ **Little** _____ **Ashley** _____
Last · First · Middle

sodexo
live!

**EMPLOYEE NO:**

Department: _____ **Stewarding** _____ Position: _____ **Steward** _____

**345309**

---

**SPECIFICS OF THE COUNSELING:**

| Date of Warning: | Date of Violation: | Time of Violation: |
|---|---|---|
| | **4/20/23** | **12:10 PM** |

Location of Violation: _____

Has the employee been previously counseled? ☐ Yes  ☒ No

Type of Warning: ☒ **Verbal**   ☐ Written

Dates of Prior Counseling:
(month, day, year)    __ / __   __ / __
                      __ / __   __ / __

**ACTION TO BE TAKEN NOW:**
☐ Oral Warning      ☐ Probation
☐ Written Warning   ☐ Suspension (Pending Investigation)
☐ Dismissal         ☐ Other: _____

Employer Statement (Insert facts supporting counseling):

*Ashley is recieving her first verbal warning for her call outs and lateness. Please see attachment.Any further violation of this nature will lead to future write ups, and may lead to separation from Sodexo Live!@NGA.*

**REASON FOR COUNSELING:**
☒ Absenteeism
☒ Tardiness
☐ Carelessness
☐ Clocking out Early/Clock Violations
☐ Unapproved overtime
☐ Disobedience/Insubordination
☐ Failure to Follow Instructions
☐ Intoxication/Violations of Drug Policy
☐ Inappropriate Behavior to Customer/Clients
  or Poor Customer Service
☐ Falsification of Records/Documents
☐ Unsatisfactory Work Quality/Quantity
☐ Violation of Company Policies
☐ Violation of Safety Rules or Horseplay
☐ Willful Damage to Property
☐ Working on Personal Matters
☐ Obscene, Abusive or Threatening Conduct
☐ Leaving Work Area
☐ Violence or Threat of violence
☐ Unauthorized Removal or Attempt
  to Remove Company or Client Property
☐ Other:

NOTE: THE ACTION TAKEN PURSUANT TO THIS COUNSELING NOTICE DOES NOT ALTER THE EMPLOYEE'S AT WILL STATUS OR ALTER THE COMPANY'S RIGHT TO TERMINATE THE EMPLOYEE AT ANY TIME IN ITS

Employer Name (Print _____ Employer Signature: _____ Date: _____

Witness Name (Print): _____ Witness Signature: _____ Date: _____
If One Present

---

**EMPLOYEE STATEMENT:**

_____ I **AGREE** with Employer's Statement.        _____ I **DISAGREE** with Employer's statement.
(Initial)                                            (Initial)

Employee Statement: _____

---

I have read the above Counseling Notice and understand it. I also realize that further misconduct may result in additional discipline up to and including my dismissal from the company in its discretion.

Employee Name (Print _____ Employee Signature: _____ Date: _____

Translator Name (Prin _____ Translator Signature: _____ Date: _____
If Applicable